STATE v. ASHLEY

(113 S. E. 305)

1. CRIMINAL LAW—STATEMENT OF JUDGE AS TO CONVERSATION WITH FOREMAN OF JURY WAS PROPERLY MADE A PART OF THE RECORD.—A statement by the trial Judge of a telephone conversation between him and the foreman of the jury before they had reached a verdict of which no one knew until five weeks later, when the Judge made the statement, *held* properly made a part of the record.

2. CRIMINAL LAW—CONVERSATION BETWEEN TRIAL JUDGE AND JURY FOREMAN WHEN DEFENDANT WAS NOT PRESENT HELD PREJUDICIAL ERROR.—A telephone conversation between the trial Judge and the jury foreman while the jury was out, and when neither defendant nor his counsel was present, was prejudicial error, in view of Const. art. I, § 18, guaranteeing a public trial.

3. CRIMINAL LAW—STATEMENT MADE BY JUDGE TO JURY HELD PREJUDICIAL ERROR.—In a prosecution for homicide the jury returned into Court and the foreman stated that it was impossible for them

NOTE: On effect of Judge communicating with jury not in open Court, see notes in 17 L. R. A. (N. S.) 609; L. R. A. 1915D, 719.

to agree, whereupon the Court said for them to try again, that he would not order a mistrial unless he was satisfied that the jury had exhausted every effort to get together, that mistrials were a disgrace, expensive to the County and to defendant, and nothing short of judicial abortion. *Held,* that such language was prejudicial error.

Before PRINCE, J., Anderson.    May, 1921.    Reversed.

Ernest Ashley convicted of manslaughter, and he appeals.

*Messrs. Green & Earle, Watkins & Prince* and *F. B. Grier,* for appellant, cite: *Right of accused to be present at every stage of trial, and to hear all communications between Judge and jury:* Const. 1895, Art. I, Sec. 18; 16 C. J. 1090; 38 Cyc. 1859-60; 16 R. C. L. 299; 53 Am. St. Rep. 248; 128 Wis. 342; 11 Am. Dec. 185; 19 L. R. A. (N. S.) 716; 21 Mo. App. 363; 7 Ga. 396; 30 Am. St. Rep. 480; 36 S. C. 511; 40 S. C. 368; 75 S. C. 494. *Judge cannot suggest form of verdict to jury:* 38 Ann. Cas. 673. *Charge on self defense erroneous*:    Wharton, Homicide 358, 400; 112 S. C. 100; 94 S. C. 26. *Judge cannot coerce jury:* 16 C. J. 1091; 60 Pac. 659; 66 Am. St. Rep. 564; 117 N. Y. L. 520; 106 S. C. 153.

*Messrs. L. W. Harris,* Solicitor, *Bonham & Allen* and *Bonham & Price,* for respondent, cite: *As to communicated threats*: 32 S. C. 27. *No coercion to urge jury to agree*:    105 S. C. 243.

July 5, 1922.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"At the May term, 1921, of the Court of General Sessions for Anderson County, the defendant was tried upon an indictment, charging him with the murder of Arthur Hughes. After the jury was drawn in this case his Honor stated that of his own motion he proposed to keep the jury together, and in charge of the sheriff, through duly

appointed bailiffs, during and until the conclusion of the trial of the case. This was done and the jury placed in charge of two bailiffs, who were instructed to keep them together, and not allow them to talk to any one about the case, or discuss it with any one nor permit it to be discussed in their hearing. The stenographer's report of the trial is as follows:

"The State produced several witnesses who testified that on the 24th day of August, 1920, a campaign meeting was held in the town of Honea Path, in Anderson County, S. C., and that the deceased, Arthur Hughes, was acting as peace officer on that day; that after the campaign meeting had ended a crowd of people gathered on the sidewalk in front of Donald Drug Company's store, where some men were engaged in friendly scuffling; that the deceased walked into the crowd of men, and was lifted off the ground by one Willie Moore, who asked him something about scuffling; that the deceased replied that he didn't care to scuffle and about that time the defendant, Ernest Ashley, spoke to the deceased in a threatening manner; that the deceased thereupon made a few steps across the sidewalk and handed his pistol to George Page, the chief of police of the town of Honea Path; that after he had handed his pistol to Page, and while he was turning around towards the crowd, the defendant, Ernest Ashley, fired on him, inflicting upon him two wounds, which, according to the testimony of the doctors, caused the death of the said Arthur Hughes. The State also produced witnesses to testify that they had heard the defendant, Ernest Ashley, make threats against the deceased.

"The defendant, Ernest Ashley, and several witnesses produced by him, testified that he was in the crowd of men in front of Donald Drug Company's store where some people were engaged in friendly scuffling; that the

deceased, Arthur Hughes, came into the crowd of men when the scuffling was going on, and was lifted off the ground by one Willie Moore; that when the said Willie Moore let him loose the said Arthur Hughes shoved the defendant back with his left hand, saying, What in the hell you got to do with it; you think you are a damn bully; that immediately after using these words the said Arthur Hughes drew his pistol, and was in the act of firing upon defendant, when defendant opened fire upon Hughes, who fell to the sidewalk, his pistol dropping at his side, where it was picked up by George Page, chief of police. Defendant testified that he did not draw his pistol and fire upon Hughes until he saw Hughes drawing his pistol, and until he (defendant) believed that his life was in imminent danger, and that it was necessary for him to shoot Hughes to save his own life, and that he shot the said Hughes in the defense of his own life. Defendant denied that he had ever made any threats against the said Arthur Hughes, and testified that he had on that morning received a communication of a threat made by Hughes against defendant's life. The defendant produced a witness who testified that Hughes had made ·a threat that morning against the defendant, and that he (the witness) had communicated the threat to defendant on the morning before the shooting took place."

The jury found the defendant guilty of manslaughter, and he was sentenced by the Court to serve 10 years at hard labor in the State penitentiary, or upon the public works of Anderson County, whereupon he appealed to this Court.

Rule 5, § 6, of this Court (90 S. E. vii), contains the provision that—

"Each exception must contain a concise statement of one proposition of law or fact which this Court is asked to review, and the same assignment of error should not

be repeated. Each exception must contain, within itseif, a complete assignment of error. * * * The exceptions should not be long or argumentative in form."

The exceptions herein do not conform to this requirement. While we will not enforce the rule herein, as this is a capital case, nevertheless we will adopt our own arrangement in discussing the questions presented by the exceptions.

The following statement appears in the record:

1 "At some hour during the night, while the jury were out, and before reaching a verdict, the foreman, Mr. A. M. McFall, went to a telephone, not in the court room and not in the jury room, but in the office of Mr. J. Mack King, County Supervisor of Anderson County, on the same floor and across the hallway from the court room, and called up his Honor, the presiding Judge, on the telephone for the purpose of discussing with his Honor the case under consideration by the jury. A conversation took place at that time over the telephone between the foreman of the jury and his Honor, Judge Prince. The following is a statement furnished by Judge Prince as his recollection of this conversation: 'On the night when the jury was considering the case of the State against Ernest Ashley, I was called to the phone and was told that the man at the phone was McFall. On inquiry as to which McFall, he said he was foreman of the jury and the jury couldn't agree; that 11 of them were for murder with recommendation to mercy and one was for manslaughter, and that the man for manslaughter said he would not agree to any verdict but manslaughter. I don't recall just what I said in response to that, but I remember to have thought, and may have said so, that, if the jury were all satisfied beyond a reasonable doubt that it was an unlawful homicide, and the defendant was the man who was guilty, there was no reason why those who favored murder should not agree with the man

who favored manslaughter, but of course the man who favored manslaughter could not go with the man who favored murder, but I could see no reason why the men who favored murder couldn't agree with the man who favored manslaughter.' McFall said he was satisfied that they would agree on manslaughter if I would agree to impose the highest sentence provided by law. I told him I could agree to do nothing, that that was none of the jury's business, that that was entirely in the hands of the Judge, and that, if the jury did its duty, I would do mine. That was about all that passed between us. About half an hour later I was called by the constable and informed that the jury had agreed on a verdict. I went to the courthouse and received a verdict of manslaughter.'

"Neither the defendant nor his attorneys had any knowledge of this phone conversation between the presiding Judge and the foreman of the jury until long after the trial, to wit, some four or five weeks ago, when, on hearing rumors to this effect, the attorneys for the defendant thought it proper to ask Judge Prince about the matter, and on that occasion Judge Prince furnished to the attorneys the statement copied herein."

Before proceeding to discuss the merits of the conversation over the phone between his Honor, the presiding Judge, and the foreman of the jury, it is necessary to determine a preliminary question. The solicitor appealed from the order settling the case, on the ground that the Circuit Judge erred in ruling that the statement which we have just quoted should be allowed as a part of the record, upon which the defendant's appeal should be heard. The Solicitor has failed to satisfy this Court that there was error. That appeal is therefore dismissed.

We proceed to the consideration of the question whether the said conversation in itself, was prejudicial error.

Article 1, § 18, of the Constitution, provides:
"In all criminal prosecutions the accused shall enjoy the right of a speedy and public trial by an impartial jury."

In order to comply with this requirement, it is necessary that the accused in cases of felony and his counsel should be present at every stage of the trial, and that the opportunity should be afforded the general public to be present during the trial. The conversation was an exceedingly material and important part of the trial, at which neither the accused nor his counsel nor the public nor any of the jurors except the foreman were afforded the opportunity of being present. Therefore the accused was denied a right to which he was entitled under the Constitution. *State v. James,* 116 S. C., 243, 107 S. E., 907. Having reached the conclusion that the mere fact of the conversation in itself was a violation of the defendant's constitutional right to a public trial, it is unnecessary to consider the exceptions assigning errors of law in certain detailed portions of the conversation.

The following statement also appears in the record, and his Honor's rulings are assigned as error;
"The Court: You can bring out that jury, since the foreman says he wants to speak to me. He can't speak to me privately; he must speak to me publicly.

"(The jury returns to the courtroom.)

"The Court: I was informed, Mr. Foreman, that you wanted to speak to the Judge.

"The Foreman: Your Honor, I just wanted to explain to you that it is out of the question—we can't agree on the first charge. We can on the second. And we are far apart. And we have got a good many business men on the jury. They seem set in their mind. We can't change none of them. They haven't been changed. I just wanted to notify you.

"The Court: Well, I think, Mr. Foreman, that this is the third or fourth mistrial we have had at this term of the Court. It has come to be a disgrace to public justice that a jury won't render a verdict.

"The Foreman: That's the very words that I told them.

"The Court: It is a disgrace to the country; it is nothing short of judicial abortion to have mistrials; and it is expensive to the county and expensive to the defendant, or the accused. It looks like the jury ought to get together.

"The Foreman: I have used every means that I know how.

"The Court: Well, you will have to try a little bit more. I ain't going to order a mistrial until I am satisfied that the jury has exhausted every effort to get together, and I am not satisfied of that yet.

"The Foreman: . We have got some mighty hard ones.

"The Court: I don't care how hard they are.

"The Foreman: Judge, there are several of them that can't get the difference between manslaughter and murder. They get it confused. You have made your charge as plain as the nose on a man's face. It looks to me like any broad-minded sensible man ought to know the difference, but they can't construe the difference between manslaughter and murder and they are hung up on that, if you want to know. I have done everything I could to explain to them until I have got hoarse, and I have just quit.

"The Court: Well I can charge that again. ' I will try it again. Now Mr. Foreman, I will try to make myself so plain that any man ought to understand it. The law of murder is this. ' . . ."

The cases of *State v. Kelley,* 46 S. C., 55, 24 S. E., 60, and *State v. Shuman,* 106 S. C., 150, 90 S. E., 596, show that the language just quoted, which was used by his Honor the presiding Judge, in the presence of the foreman of the jury, was prejudicial error.

None of the other exceptions show prejudicial error when the charge is considered in its entirety.

New trial.