## Puckett v. Commonwealth.

(Decided October 16, 1923.)

### Appeal from Clark Circuit Court.

1. Criminal Law—Entry of Judge into Jury Room Without Request to Charge Jury Violation of Defendant's Constitutional Rights.— Where the court, while the jury was in session, without their request entered the jury room without notice to counsel or defendant, and charged the jury with respect to disagreements, he violated Bill of Rights, section 11, declaring accused has a right to be heard by himself and counsel, and Criminal Code of Practice, sections 183-229, 244-246, 249.

2. Criminal Law—Entry of Jury Room by Court Held Prejudicial.— It cannot be said that accused was not prejudiced by the court's entry into the jury room without request and without notice to counsel or defendant where he instructed the jury concerning disagreements, in view of Bill of Rights, section 11, and Criminal Code of Practice, sections 183-229, 244-246, 249.

3. Criminal Law—Deprivation of Constitutional Right Prima Facie Prejudicial.—The deprivation of constitutional right is prima facie prejudicial.

4. Criminal Law—Photograph of Forged Instrument Competent.— In a forgery prosecution, where the original writing, the genuineness of which is questioned, is produced, a photographic enlargement through a magnifying lens may be employed to show alterations by accused.

REDWINE & REDWINE, J. SMITH HAYS and C. C. WALLACE for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, C. F. Puckett, by the prosecution of this appeal, seeks the reversal of a judgment of the Clark circuit court convicting him of the crime of forgery, for which he was indicted and, upon trial, found guilty by verdict of a jury, which fixed his punishment for the

crime charged at imprisonment of two years in the penitentiary.

The appellant contends that he did not receive a fair trial in the court below and should be accorded a reversal of the judgment of conviction, because of error committed by that court in the following particulars: (1) Misconduct of the court in entering alone the jury room during the jury's deliberations leading to a verdict and before they had agreed upon a verdict, and in the absence of appellant and his counsel, advising or further instructing them in respect to their duties as jurors in arriving at their verdict; (2) in admitting incompetent evidence against the appellant, and excluding competent evidence offered in his behalf; (3) in refusing to grant the appellant a new trial upon the ground that the verdict of the jury is unsupported by and flagrantly against the evidence.

The several contentions above stated were embraced in the grounds filed in support of the appellant's motion for a new trial made in the court below and overruled by that court. Before acting upon the motion for a new trial the trial court refused to permit the appellant to prove by the members of the jury, or some of them, what was said or done by him or them when and after he entered their room alone before the return of their verdict, but added himself to the bill of exceptions his own statement of what he claimed was then said by him to the jury, which is as follows:

"Gentlemen, have you been able to reach a verdict? A general reply in the negative. If the jury is irreconcilably disagreed as to the question of guilt or innocence it presents a different situation as when you are disagreed as to penalty. No juror should ever subscribe to a verdict that does not express his conscientious opinion as to what the verdict should be. This is the sort of case which after final submission requires the court to keep the jury together and not permit them to separate. Whether or not the word 'lock up' was used the court does not recall."

It does not appear from the record, nor was it claimed by the trial court, that his visit to the jury room or interview there with the jury was by the request or invitation of the jury; or that either was known at the time to the appellant or his counsel, both of whom, admittedly, were absent when the visit and interview occurred and during their continuance. It would seem sufficient to indicate as

a reason for condemning the action of the trial judge in thus invading the privacy of the jury while they were deliberating as to their verdict, and, in the absence of the appellant and his counsel, advising or instructing them in reference to their duties in arriving at a verdict, that he deprived the appellant of an important right guaranteed to every citizen of the state indicted for a felony by its Constitution, Bill of Rights, section 11, which, among other things, declares:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel. . . . "

In commenting on and applying this provision of the Constitution we, in Allen v. Commonwealth, 86 Ky. 642 (quoting with approval from the opinion in the earlier case of Temple v. Commonwealth, 14 Bush 769), said of it:

"The right to be 'heard by himself and counsel,' necessarily embraces the right to be present himself, and to have a reasonable opportunity to have his counsel present, also, at every step in the progress of the trial; and to deprive him of this right is a violation of that provision of the fundamental law."

The imperativeness of the requirement rendering necessary the presence of the accused during the trial of a felony, is also declared in the Criminal Code, sections 183, 229. The first providing:

"If the indictment be for a felony, the defendant *must be present,* and shall remain in actual custody during the trial, unless his bail appear personally in court, and consent that he remain on bail, in which case he shall be placed in actual custody when the case is finally submitted to the jury. If he escape from custody after the trial has commenced, the trial may either be stopped or progress to a verdict, at the discretion of the Commonwealth's attorney; but judgment shall not be rendered until the presence of the defendant is obtained."

Section 229, *supra,* begins and ends with the following brief declaration: "During the trial of an indictment for felony the defendant shall be committed to remain in the custody of the proper officer."

It is patent that the provisions of this section do not conflict with those of section 183, *supra,* nor in any respect qualify the provision of that section making imperative the presence of the defendant during the trial, which must be observed though he remain on bail; but as section

183 contains no provision indicating in what manner the
actual custody of the defendant shall be maintained or
enforced during the trial, if ordered by the court because
of the failure of his bail to personally appear in court
and consent that he remain on bail, section 229 doubtless
was enacted to supply the omission by providing, as it
does, that in case the actual custody of the defendant be
required during the trial on account of the failure or
refusal of his bail to consent that he remain on bail, he
"shall be committed to and remain in the custody of the
proper officer;" that is, the jailer or other officer of the
court charged by law with that duty.

The words "during the trial" appearing in each of
the sections, supra, have in numerous cases decided by
this court been held to embrace all stages of the trial,
which, as declared, "begins with the swearing of the jury
and ends when the verdict is returned." Willis v. Com-
monwealth, 85 Ky. 68; Allen v. Commonwealth, 86 Ky.
642; Collier v. Commonwealth, 110 Ky. 516; Temple v.
Commonwealth, 14 Bush 769; Tye v. Commonwealth, 3
R. 59; Kokas v. Commonwealth, 194 Ky. 44. (Also see
Cooley's Constitutional Limitations, p. 319.)

There are other sections of the Criminal Code yet to
be mentioned, equally as mandatory as those already
considered, that have a direct bearing on the conduct and
duties of the jury, the trial court's control of and power
over them; and, also, upon the rights of the defendant
when and while on trial for a felony. One of the sections
referred to is 244, which provides:

"On the trial of offenses which are or may be punished
capitally the jurors, after they are accepted, shall not be
permitted to separate, but shall be kept together, in
charge of the proper officers. On the trial of other felon-
ies the jurors, before the case is submitted to them, may
be permitted to separate, in the discretion of the court,
but after the case is submitted they shall be kept together
in charge of an officer. . . . "

Section 245 directs that, when the jury is required to
be kept together, it shall be in charge of officers sworn
"to keep them together, and to suffer no person to speak
to or communicate with them on any subject connected
with the trial, and not to do so themselves."

By section 246, it is provided:

"The jury, whether permitted to separate or kept in
charge of officers, must be admonished by the court that

it is their duty not to permit any one to speak to, or communicate with, them on any subject connected with the trial, and that all attempts to do so should be immediately reported by them to the court, and that they should not converse among themselves on any subject connected with the trial, nor form, nor express, any opinion thereon, until the case be finally submitted to them. This admonition must be given, or referred to, by the court at each adjournment.''

If after the submission of the case to the jury and during their deliberations before reaching a verdict, the necessity for a communication or conference between them  and the court should arise, the place and manner of bringing the jury and court together for the purposes of such conference or meeting are prescribed by section 249, which provides:

''After the jury retires for deliberation, if there be a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, *they must request the officer* (in whose care they are) *to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties.''*

The counsel here referred to are the Commonwealth or county attorney representing the Commonwealth, and the attorney representing the defendant on the trial. And while section 249, *supra,* does not in words declare that the presence of the defendant at such a conference or meeting between the court and jury as is therein provided for shall be necessary, his right to be then present cannot be affected by the failure of that section to give it recognition; for, as previously remarked, this right of the defendant to be present, and have his counsel present, during the trial and at all stages thereof, is one guaranteed by the Constitution and declared by section 183, Criminal Code; therefore, its reiteration by section 249 was unnecessary. The uncontroverted facts appearing of record clearly show, not only that the meeting and conference between the court and jury complained of in this case took place in the jury room after its submission, in the absence of and without notice to counsel for the appellant or the Commonwealth, but, also, that it neither resulted from, nor was rendered necessary by, any ''disagreement of the jury as to any part of the evidence,'' desire on their part to be ''informed on a point of law,'' or any com-

munication from them to the court. In view of the show-ing made by the record, it is manifest that in thus meeting, conferring with and advising the jury with respect to their duties in the matter of arriving at a verdict the trial court disobeyed the mandatory provisions of the Constitution and Criminal Code, *supra,* and thereby deprived the appellant of a highly important constitutional right.

It is insisted, however, by counsel for the Commonwealth that though the trial court in the matter of thus entering the jury room and advising the jury as to their verdict, without the consent and in the absence of appellant and his counsel, may have committed error, the appellant was not thereby prejudiced in any substantial right; hence, the error of the court furnishes no ground for the reversal of the judgment. The unsoundness of this contention lies in its unauthorized assumption that the jury were in nowise influenced, nor their verdict affected, by what was said to them by the court.

In considering what took place between the trial court and the jury in the latter's room, it will be but fair to the court and just to the appellant to confine ourselves to the statement written by the former in the bill of exceptions as to what there occurred and such inferences or conclusions as may reasonably be deduced therefrom. It is fairly inferable from the statement that the trial judge's visit to the jury room was not in response to a request or communication received by him from the jury, and apparent from the inquiry made by him of the jury upon entering the room, that the object of his visit was to ascertain from them whether they had agreed upon a verdict, and, if they had not, to assist and hasten them in doing so. When informed by the jury that they had not agreed upon a verdict, the trial judge seemed to assume, though without information from them authorizing it, that the jury were not disagreeing as to the appellant's guilt, but as to the punishment he should receive. Whereupon he proceeded to orally instruct or advise them in respect to their duties in arriving at a verdict as set forth in his statement appearing in the record, the language of which is so ambiguous as to render its meaning confusing. This is notably true of that part of the statement which, in attempting to point out the difference in the situation presented when the jury "are disagreed as to the question of guilt or innocence" and that presented where

they "are disagreed as to penalty," failed to define such difference, or to advise the jury as to the course of conduct they might properly pursue in either situation in order to remove the disagreement and arrive at a verdict. The subsequent sentence declaring what in every case should govern the juror in determining whether he will subscribe or agree to a verdict, while correct in the abstract, threw little, if any, light upon the meaning of the language immediately before employed.

The closing words of the trial judge's statement to the jury, substantially informing them that they would have to be kept together and not permitted to separate until they found and returned a verdict (to which, he admits, he may have added the words "locked up" after the words "kept together") could have been but a repetition, in substance, of what it will be presumed he, in the performance of his official duty, said to them in open court when the case was submitted; hence, the reminder to them in the jury room was inopportune and unnecessary. Besides, connected as it was with the unsolicited and, to the jury, unexpected visit of the trial judge to their room and the other statements made by him to them while there, its probable effect upon the jury was to shorten their deliberations and thereby so hasten the verdict as to prevent them from giving it the maturer consideration it otherwise would or might have received.

As it appears from the record that the trial judge's visit to and interview with the jury in their room occurred within, or not later than, an hour after the submission to them of the case, it is patent that their deliberations looking to a verdict had not then extended beyond an hour; and as this was not an unreasonable or unusual time for a jury to consume in considering after its submission to them a case involving a charge of felony, without arriving at a verdict, no reason is apparent for the apprehension of the trial court that they were so disagreed as to make a verdict improbable, or would unnecessarily consume time in further efforts to agree upon a verdict, that should be devoted by them to the consideration of other cases awaiting trial by jury. It would seem, therefore, that there was no justifiable cause for the impatience of the trial judge for an immediate verdict, which evidently manifested itself to the jury during his conference with them in their room.

It could not have been contemplated by the makers of the Constitution that the question as to whether a de-

fendant on trial for a felony has been prejudiced in a substantial right by the failure of the trial court to obey the mandatory provision of that instrument, conferring such right and guaranteeing its enjoyment, should be left to conjecture or speculation. The rule declared in this jurisdiction for determining that question makes the deprivation of the constitutional right *prima facie* prejudicial. This rule is recognized in Meece v. Commonwealth, 78 Ky. 586, relied on by counsel for the Commonwealth. In that case defendant, though charged with murder, was convicted of voluntary manslaughter, the punishment inflicted being imprisonment of twenty-one years in the penitentiary. One of the grounds urged for the reversal of the judgment of conviction was alleged error of the trial court, committed after the submission of the case to the jury, in adding to an instruction by interlineation in the absence of the defendant, but in the presence of his counsel, certain words properly explanatory of its meaning, which was done at the request and in the presence of the jury following their return to the court room.

Although it is conceded in the opinion of this court that "the presence of the accused when instructions are given or modified is essential to the ends of justice," and that the action of the trial court in making the addition to the instructions in the absence of the defendant was error, it nevertheless affirmed the judgment of that court for the reasons stated in the concluding part of the last paragraph of the opinion: "One charged with the commission of a felony cannot be tried during his absence from the court room, and when any step is taken during the trial in the absence of the prisoner the *record must show affirmatively that he could in nowise have been prejudiced by it, else this court will reverse the judgment.* The evidence in this case is so plain as to the guilt of the accused and the enormity of the offense that no slighter punishment could have been inflicted, and we are satisfied the ends of justice require that the judgment should be affirmed."

The principal reason advanced by the above excerpt from the opinion for the court's conclusion that the defendant could not have been prejudiced in any substantial right by the error of the trial court in question in that case, is wholly inapplicable to the instant case, in which the evidence found in the record is too conflicting to en-

able us to say that it established the appellant's guilt of the offense charged with the unerring certainty that seemed apparent to the court in the case, *supra*.

Although it appears from the opinion, *supra,* that the defendant's counsel was present when the trial court made the addition to the instructions, and that he made no objection thereto, it is nowhere intimated in the opinion that his presence obviated the necessity for the defendant's presence, or that it authorized the court to make the addition to the instructions in the latter's absence. It, however, reiterates the necessity for the defendant's presence at every step taken in his case during the trial, and gives emphasis to the fact that the taking of any step during the trial in his absence will compel the reversal of the judgment, unless it be affirmatively shown by the record that he could not have been prejudiced by it.

In Kokas v. Commonwealth, *supra,* there was a reversal of the judgment of conviction because of error committed by the trial court in the absence of the defendant, after the submission of the case and while the jury were deliberating upon their verdict, in sending by their request to the jury room the official stenographer, by whom the evidence had been taken on the defendant's trial, and permitting him while there alone with the jury to read from his stenographic notes to them, with his explanations of same, such parts of the evidence so taken by him as they desired to hear. In expressing our condemnation of this action of the trial court we, in part, said:

"In the face of so grave an error as that committed by the trial court in this case the appellate court should not stop to weigh probabilities, or try to discover from the record whether it was prejudicial to the accused, but must assume that the error amounted to such an invasion of appellant's constitutional rights as to deprive him of a fair and impartial trial."

The opinion cites the following civil cases in which it was held that such an error as that committed by the court in Kokas v. Commonwealth, *supra,* compelled the setting aside of the verdict: Luttrell v. Maysville & Lex. Ry. Co., 18 B. Mon. 291; Louisville, Cin. & Lex. R. R. Co. v. Cavens, Admr., 9 Bush 559; L. H. & St. L. R. R. Co. v. Morgan, 110 Ky. 740.

In Bentler v. Commonwealth, 143 Ky. 503, the trial court committed precisely the same error complained of in the instant case; but as much of the opinion had pre-

viously been devoted to the consideration of another error that also compelled the reversal of the judgment, the constitutional objections to the action of the trial court constituting the error in question were not discussed, it being deemed sufficient to show, as was done, that the error was one that also resulted from the trial court's violation of the provisions of section 249, Criminal Code. However, in considering it we said:

"The trial judge likewise erred in entering the room where the jury were deliberating, and, in the absence of accused and his counsel, answering questions there propounded by the jury and giving them advice with respect to the law of the case or the verdict to be returned by them. Not only was this action of the court a violation of the provision of section 249 of the Criminal Code, which requires when the jury desires to be informed upon a point of law that they should be brought into court and the information given by the court 'in the presence of, or after notice to the accused and his counsel,' but it was calculated to put the court in a position to be misjudged and his motive questioned. Cyc., vol. 12, page 681; Goode v. Campbell, 14 Bush 75."

We have been referred to no case in which it appears to have been held that a meeting and conference between court and jury in the privacy of the latter's room and in the absence of the defendant and his counsel, did not constitute reversible error. It is not intimated by counsel for appellant that the trial judge, whose conduct in meeting and conferring with the jury in their room is here complained of, was actuated by any improper motive, nor is there anything appearing in the record that tends to impute to him such a motive; but the fact that in taking the action referred to his purpose was to advise and assist the jury in the performance of a duty with which they were charged, did not clothe him with authority to deprive the appellant of a right guaranteed him both by the Constitution and statutes of the state; and as the record fails to affirmatively show that the appellant was not thereby prejudiced in his substantial rights, we are constrained to hold that the action of the trial judge complained of must be declared reversible error.

The appellant's complaint of error in the admission of incompetent evidence, contained in his second contention, seems to be devoid of merit. In order to understand this contention it should be stated that the subject of the

alleged forgery for which the appellant was indicted was a written receipt executed to him by one W. M. Hamilton, which reads as follows: "March 16th, 1922, received of C. F. Puckett seventy dollars, payment on note. W. M. Hamilton." According to the testimony of Hamilton the amount paid him on the note was only $7.00, and the receipt therefor as written by appellant and signed by him (Hamilton) at the time of the payment, was for the $7.00. but that when next seen by him the word "seven" originally appearing therein had been changed to "seventy" by adding to the paper in writing the letters "ty" after and at the end of the word seven. In was further testified by Hamilton that the changing of the word "seven" into "seventy" was a forgery, and this is the forgery for which the appellant was indicted.

The admitted evidence complained of as incompetent were certain photographs made of the receipt in question by one Earp, who, upon being introduced as a witness, testified that the photographs were made by him, also as to their accuracy, and that they showed an enlargement of the receipt. The appellant's counsel, without stating the reasons therefor, objected to the exhibition of the photographs to the jury. The objection was overruled and the photographs introduced, and to this ruling appellant excepted.

We see no reason for holding the photographs incompetent as evidence. It seems to be a well recognized rule of the law of evidence that where the original writing, the genuineness of which is questioned, is produced, a photographic enlargement through a magnifying lens may be employed. Wigmore on Evidence, section 797, subsection 4, page 906; 22 C. J., section 1121, page, 918. In First Nat. Bank of Paducah v. Wisdom's Executors, 111 Ky. 135, wherein the genuineness of the signature to a note was involved, it was held that photographs of the signature in question and others of the same person were properly admitted as evidence, the court in so holding saying:

"But they were only a more enduring form of exhibiting the signature to the jury as under a magnifying glass. Such evidence has often been held competent."

The record presents no ground for the appellant's complaint of error on the part of the trial court in excluding competent evidence offered in his behalf, as it fails to show the exclusion of any such evidence.

The appellant's final contention that a verdict of "not guilty" should have been directed in his behalf upon the evidence of the Commonwealth, and that the verdict returned is flagrantly against the evidence, is, in our opinion, also without merit. As the case will be retried, we will not discuss in detail the evidence, nor express any opinion as to its weight or effect, further than to say that, while unusually conflicting, it was sufficient to require the submission of the case to the jury.

For the reasons indicated the judgment is reversed for a new trial and such further proceedings as may not be inconsistent with the opinion.