Leroy WALKER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17547.

United States Court of Appeals District of Columbia Circuit.

Argued May 2, 1963.

Decided July 18, 1963.

Edgerton, Senior Circuit Judge, dissented.

Mr. James Heinz, Washington, D. C., for appellant.

Mr. Tim Murphy, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Arthur J. McLaughlin, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and WILBUR K. MILLER and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

An indictment filed October 3, 1960, charged that the appellant, Leroy Walker, and three others—James M. Walker, Charlie M. Walker and Joseph E. Quarles —on or about August 13, 1960, robbed a filling station attendant of $333 in money and a change carrier worth $5.00.

On November 3, 1960, Quarles, who had then begun serving a ten-year sentence for robbery imposed by a court in Maryland, entered a plea of guilty. Later he became a witness for the Government in the trial of the three Walkers, who had pleaded not guilty. He testified that he and the appellant Leroy committed the armed robbery, which he de-

4. Common gender, of course.

scribed in detail, and maintained that James M. Walker and Charles M. Walker had no part in it. Other evidence for the prosecution tended to show, however, that all four indictees had participated in the commission of the crime: police officers testified that James and Charlie made self-incriminatory statements to them.

After the jury retired to consider of its verdict, the three Walkers, who were on bond, and their counsel left the courtroom. When they returned later in the day, the judge said to them in open court:

"Gentlemen, in the Walker Case I received a note from the jury requesting as to whether or not the man who turned state's evidence, Quarles, had connected James and Charles Walker with the crime.

"I had the Reporter read to me all of Quarles' testimony and he has not in his testimony connected James and Charles with the crime. And seemingly the only testimony that has had anything to do with them in their connection with it were the admissions alleged by the detectives. I have so notified the jury."

Leroy Walker took no exception and did not in any way indicate objection to the court's action. Thereafter the jury returned a verdict finding Leroy guilty. It disagreed, however, as to his co-defendants, James and Charlie.

Leroy appeals. He urges, *inter alia,* that the trial judge committed reversible error when, in Leroy's absence, he answered the jury's question as to whether Quarles had implicated his co-defendants, James Walker and Charlie Walker. He does not argue or suggest that he was prejudiced thereby, but simply says the error was "so gross that it is not necessary to show that it was prejudicial,"

and cites Fina v. United States [1] in support of that proposition.

■■ Criminal Rule 43 requires the presence of the defendant "at every stage of the trial." This prohibits the judge from communicating with the jury in any way, either before or after it has begun to deliberate, when the defendant is absent. Consequently, the trial judge erred when he answered the jury's inquiry when the appellant was not present. Rule 43 is a salutary provision which trial judges should scrupulously observe, no matter how remote the possibility of prejudice may seem.

Such an error does not require reversal, however, when the record shows with reasonable certainty that it did not prejudice the defendant's substantial rights. Speaking of a similar infraction of Rule 43, Judge Learned Hand said: [2]

" * * * But, like other rules for the conduct of trials, it is not an end in itself; and, while lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity. [Cases cited.] There cannot be the slightest doubt here that the informality— for, at most, it was no more—did not prejudice the accused."

This sensible statement was in obedience to, and was required by, Criminal Rule 52(a): "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Practically all cases holding that a violation of Rule 43 is reversible error involved situations where it was decided there was resultant prejudice or a reasonable possibility thereof.[3] To be sure, the Fina case, supra, cited by the appellant, held otherwise, but in the later

---

1. 46 F.2d 643 (10th Cir., 1931).

2. United States v. Compagna, 146 F.2d 524, 528 (2nd Cir., 1944), cert denied 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422, rehearing denied 325 U.S. 892, 65 S.Ct. 1084, 89 L.Ed. 2004 (1945).

3. For example, see Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L. Ed. 787 (1927).

case of Jones v. United States [4] the Tenth Circuit abandoned its Fina ruling that such an incident amounts to an unconstitutional denial of a public trial which requires reversal, even though not prejudicial. It said:

" * * * [W]e can let stand no conviction where the defendant was not present at all stages of the proceedings unless the record completely negatives any reasonable possibility of prejudice arising from such error. Our review of the record here convinces us that there is no reasonable possibility of prejudice to appellant in the [present] case."

Many courts, both state and federal, have dealt with the problem presented by a trial judge's communication with the jury in the defendant's absence and are substantially in accord. A most succinct and satisfactory statement of the governing principles was made by the Maryland Court of Appeals in La Guardia v. State: [5]

" * * * [I]f the record shows affirmatively that the appellant was prejudiced by an improper communication of the judge with the jury, there is reversible error; and also * * * if the record shows error by such communication, but does not show whether or not the error was prejudicial, it is presumed to be prejudicial and requires a reversal. Little v. United States, 10 Cir., 73 F.2d 861, 96 A.L.R. 889; Ah Fook Chang v. United States, 9 Cir., 91 F.2d 805, 810. On the other hand, if the record shows affirmatively that the communication had no 'tendency to influence the verdict' (Duffy v. State, 151 Md. 456, 474, 135 A. 189, 195), the judge's impropriety in communicating with the jury out of the presence of the defendant does not require a reversal. Dodge v. United States, 2 Cir., 258 F. 300, 7 A.L.R. 1510; Outlaw v. United States, 5 Cir., 81 F.2d 805. * * * "

Federal cases decided since this Maryland decision are to the same effect as those to which it refers.

Accordingly we hold that the trial judge's impropriety in communicating with the jury out of the presence of Leroy Walker does not require reversal if the record affirmatively shows the communication had no tendency to influence the verdict against him. In the language of the Tenth Circuit's Jones case, supra, we cannot let Leroy's conviction stand "unless the record completely negatives any reasonable possibility of prejudice" to him arising from the judge's error.

The record clearly shows the jury's question and the judge's answer had nothing whatever to do with the case against Leroy Walker or with his defense. As the Tenth Circuit said in the Jones case, supra, "Appellant's presence would have been no aid to his defense and it is apparent that he suffered no prejudice." This is clear from the trial judge's statement to counsel in which he described the note he received from the jury and his answer to it—a statement we have already quoted and which we have no reason to believe is either inaccurate or incomplete. The jury simply wanted to be reminded whether Quarles, who indubitably had implicated Leroy Walker, had connected James and Charlie with the crime. The judge correctly answered that Quarles had not implicated James and Charlie. Thereupon, the jury found Leroy guilty but disagreed as to his co-defendants.

Thus, the jury's question and the judge's answer did not concern Leroy in any way. The question was not asked as to him [6] and the answer made no reference to him. He took no exception

4. 299 F.2d 661, 662, cert. denied 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101 (1962).

5. 190 Md. 765, 58 A.2d 913, 917 (1948).

6. Evidently the jury clearly remembered Quarles's unequivocal testimony that Leroy took the money from the filling station attendant while he, Quarles, held a gun on him.

to the court's action when it was explained to him, and would have had no reason to except had he been present. His presence would not have aided his defense. The record conclusively shows he suffered no prejudice. Appellant's argument that the incident complained of, in which he had not the slightest interest, unconstitutionally deprived him of a public trial is unrealistic in the extreme. It exhalts technicality over practicality, theory over actuality.

The other reasons for reversal relied on by the appellant seem to us to lack substance. His guilt was amply proved and his conviction must stand.

Affirmed.

EDGERTON, Senior Circuit Judge (dissenting).

In Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927), a prosecution for conspiracy to violate the Prohibition Act, counsel for Shields and the prosecuting attorney jointly asked the judge in chambers, after the jury retired, to hold the jury in deliberation until it reached a verdict. The jury afterwards sent to the judge in chambers a note saying it found certain defendants guilty and certain others not guilty but was "unable to agree" as to Shields and two others. The judge in chambers then sent the following note to the jury: "The jury will have to find also whether Shields [and the two others] are guilty or not guilty." 273 U.S. at 584, 47 S.Ct. 478, 71 L.Ed. 787.

Shields was convicted. The Court of Appeals for the Third Circuit affirmed the conviction but the Solicitor General found no "satisfactory ground for opposing the petition for a writ of certiorari . . ." 273 U.S. at 587, 47 S. Ct. at 479, 71 L.Ed. 787. The Supreme Court granted certiorari and reversed the conviction.

The Supreme Court said: "These communications were not made in open court, and neither the petitioner Shields nor his counsel was present, nor were they advised of them. * * * The joint request to the court * * * did not in-clude any agreement that the court should receive a communication from the jury and answer it without giving the defendant and his counsel an opportunity to be present in court to take such action as they might be advised * * *. Counsel, in making it, necessarily assumed, as they had a right to, that any communication from the jury would be made in open court, and that they must necessarily be offered an opportunity to withdraw the request already preferred, or to vary it. * * * 'Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object.' If this be true in a civil case, a fortiori is it true in a criminal case. The request made to the court * * * did not justify exception to the rule of orderly conduct of jury trial entitling the defendant, especially in a criminal case, to be present from the time the jury is impaneled until its discharge after rendering the verdict. We reverse the judgment without reference to the other causes of error assigned." 273 U.S. at 585, 587, 588, 589, 47 S.Ct. at 478, 479, 71 L.Ed. 787.

The judge's instruction that the jury find Shields either guilty or not guilty may or may not have been erroneous and prejudicial. The Supreme Court did not consider that question. It reversed the conviction not because of what the judge said but because he said it in a note. The Court did not find that his saying it in a note caused prejudice or might have caused prejudice or might have been thought to have caused prejudice. It seems clear to me that this method of saying what he was asked to say made no difference to the accused. Yet it made all the difference to the Supreme Court. As the Supreme Court reversed the conviction of Shields we should reverse the conviction of Walker, because the judge sent the jury a note

and "without reference to the other causes of error assigned."

I think the Sixth Amendment of the Constitution of the United States also requires us to reverse this conviction. The Amendment says: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * *." If this constitutional right is denied, a conviction must be reversed whether or not the denial is prejudicial to the accused.[1] Beyond question it is "the settled rule of the federal courts that a showing of prejudice is not necessary for reversal of a conviction not had in public proceedings." Brennan, J., dissenting, in Levine v. United States, 362 U.S. 610, 627n, 80 S.Ct. 1038, 1048, 4 L.Ed.2d 989 (1960).

Since a charge to the jury is a necessary part of a criminal trial, if the public is excluded from the court room when a charge is given, the right to a public trial is denied and the conviction must be reversed, irrespective of prejudice. People v. Micalizzi, 223 Mich. 580, 194 N.W. 540 (1923). The Sixth Amendment guarantees, in felony cases at least, the right of the accused to be present at "every stage of the trial, inclusive of the empaneling of the jury and the reception of the verdict * * *" Diaz v. United States, 223 U.S. 442, 455, 32 S.Ct. 250, 253–254, 56 L.Ed. 500 (1912).[2] It has been held accordingly that ir-respective of prejudice, exclusion of the accused from the court room when a supplemental instruction is given requires reversal. Fina v. United States, 46 F.2d 643, 644 (10th Cir., 1931); [3] People v. Beck, 305 Ill. 593, 137 N.E. 454, 456 (1922).

A fortiori a constitutional right is denied if a charge is privately given in a personal visit by the judge to the jury room. Puckett v. Commonwealth, 200 Ky. 509, 255 S.W. 125, 34 A.L.R. 96 (1923).[4] A private telephone conversation between the judge and the foreman of the jury violates the constitutional right and requires reversal. State v. Ashley, 121 S.C. 15, 113 S.E. 305, 307 (1922); Raab v. State, 62 Okl. Cr. 361, 371, 71 P.2d 773, 778 (1937) (statute). In State v. Wroth, 15 Wash. 621, 47 P. 106, 107 (1896), the judge, learning from a bailiff that the jury wished to see him, went to the open door of the jury room, returned to the court room, and told counsel that the jury had asked him to repeat his charge on reasonable doubt. Without concerning itself with the terms or possible effect of what, if anything, the judge said to the jury in reply, the Supreme Court of Washington held that there was "such misconduct on the part of the trial judge as requires reversal * * the law does not subject parties litigant to the disadvantage of being required

1. People v. Hartman, 103 Cal. 242, 37 P. 153, 42 Am.St.R. 108 (1894); Davis v. United States, 247 F. 394, 398–399, 1918C L.R.A. 1164, 1168 (8th Cir., 1917); Tanksley v. United States, 145 F.2d 58, 59, 156 A.L.R. 257, 260 (9th Cir., 1944); United States v. Kobli, 172 F.2d 919, 921 (3d Cir., 1949); People v. Jelke, 308 N.Y. 56, 123 N.E.2d 769, 48 A.L.R.2d 1425 (1954), are illustrative cases.

Similarly, if women are excluded from a jury panel in violation of statute, "reversible error does not depend on a showing of prejudice in an individual case. * * * 'Such action * * * does not accord to the defendant the type of jury to which the law entitles him.' " Ballard v. United States, 329 U.S. 187, 195, 67 S. Ct. 261, 265, 91 L.Ed. 181 (1946).

2. The case dealt with a provision of the Philippine Civil Government Act of 1902 but the Supreme Court said: "its substantial equivalent is embodied in the Sixth Amendment to the Constitution of the United States." Ibid.

3. Any implication to the contrary in the recent case of Jones v. United States is dictum since the court said: "The most that can be said for appellant's contention is that the record does not affirmatively show complete compliance with the provisions of Rule 43, FED.RULES OF CRIM.PROC. * * *" Jones v. United States, 299 F.2d 661, 662 (10th Cir., 1962), cert. denied, 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101 (1962).

4. A dictum suggests that if absence of prejudice were affirmatively shown, the conviction need not be reversed. Id., 200 Ky. at 518, 255 S.W. at 129, 34 A.L.R. at 102.

to accept the statement of even the judge as to what occurs between himself and the jury at a place where the judge has no right to be, and where litigants cannot be required to attend. It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted."

In the present case, the judge communicated with the jury in a private note. This violated the rule of the Shields case, supra, and the constitutional right of the accused to a public trial.

Appellate courts are directed to disregard errors which do not affect substantial rights. F.R.Crim.P. Rule 52 (a); [5] 28 U.S.C. § 2111 (1958). "This applies * * * unless a constitutional right is infringed." Starr v. United States, 105 U.S.App.D.C. 91, 95, 264 F. 2d 377, 381 (in banc, 1958), cert. denied, 359 U.S. 936, 79 S.Ct. 652, 3 L. Ed.2d 639 (1959); Edmonds v. United States, 104 U.S.App.D.C. 144, 150, 260 F.2d 474, 480 (1958) (dissenting opinion). Cf. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1247–1248, 90 L.Ed. 1557 (1946). The "substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." Russell v. United States, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046–1047, 8 L.Ed.2d 240 (1962); quoting Smith v. United States, 360 U.S.

1, 9, 79 S.Ct. 991, 996–997, 3 L.Ed.2d 1041 (1959). Whatever may be thought of the trial court's failure to comply with Rule 43 of the Federal Rules of Criminal Procedure, we are not required or permitted to disregard the court's failure to comply with the Sixth Amendment.

This court cites United States v. Compagna, 146 F.2d 524, 528 (2d Cir., 1944), cert. denied, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945). In that case the jury sent the judge a written request to have certain testimony read. The judge "stopped in the jury room" and told them this testimony would be read to them after they returned from lunch. It was read to them. In an opinion by Judge Learned Hand the Court of Appeals for the Second Circuit affirmed convictions, on the ground that "the informality—for, at most, it was no more —did not prejudice the accused." But neither was it an instruction. And the Court of Appeals did not discuss or even mention the constitutional right of the accused to a public trial. As I have shown, it has been held repeatedly that a constitutional right is denied if a judge gives an instruction privately. Few if any courts have consciously held the contrary. The trial court's "obvious error" [6] in the present case is "so fundamental as necessarily to affect the substantial rights of the defendant regardless of the nature or propriety of the instruction given" [7] and reversal should follow.

---

5. This rule restates pre-existing law. Act of Feb. 26, 1919, c. 48, 40 Stat. 1181; former 28 U.S.C. § 391 (1940). Notes of Advisory Committee on Rules, 18 U.S.C. Appendix, p. 3439 (1958).

6. Jones v. United States, 113 U.S.App.D.C. 352, 356, 308 F.2d 307, 311 (1962).

7. Arrington v. Robertson, 114 F.2d 821, 823 (3d Cir., 1940).