**UNITED STATES of America**

v.

**Theodous McNAIR, Appellant.**

**No. 22372.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1969.

Decided April 8, 1970.

---

Mr. William H. Meserole, Jr., College Park, Md. (appointed by this court) for appellant.

Mr. D. William Subin, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

A jury found appellant guilty as charged in an indictment containing single counts of robbery[1] and assault with a dangerous weapon.[2] Reversal is sought on grounds of (a) insufficiency of the evidence, (b) an identification proceeding conducted at his request in the courtroom under the auspices of the trial judge just before the trial began, and (c) the absence of indication by the record as to whether appellant was present when the judge considered with counsel an inquiry from the jury during deliberations and thereafter responded to the inquiry. We find no error requiring reversal, and therefore affirm.

I

A lone gunman approached Max Silverman on a parking lot, thrust a gun in his ribs, and demanded a box of money Silverman was carrying. As Silverman raised his hands, the gun went off; following discharge of the gun, the bandit struck Silverman on the head with the gun, grabbed the box, and ran away. Silverman gave the police a de-

1. D.C.Code § 22–2901 (1967).

2. D.C.Code § 22–501 (1967).

scription of his assailant and several times attempted unsuccessfully to effect an identification from photographs. More than five months later, he picked appellant's picture from a group of eight color photographs. Neither then nor during the nearly six months thereafter while appellant awaited trial was a lineup identification of appellant undertaken.

When his case was called for trial, and before a jury was impaneled, appellant moved for a "lineup," to be held in the courtroom under the supervision of the trial judge, at which Silverman's ability to effect a face-to-face identification of appellant might be tested. The judge, after warning that there was danger inherent in such a course,[3] granted the request, and gave defense counsel a free hand in making the arrangements. On the next morning, four men of similar appearance, including appellant, all selected by defense counsel, were seated together in the courtroom.[4] Silverman was then brought in to view them and, in the presence of the judge and counsel on both sides, he thereupon identified appellant as the man who had held him up.

As a part of the Government's case in chief, Silverman identified appellant from the witness stand, and related his prior identifications of appellant from the color photographs and in the court-

room. A police officer also testified to the photographic identification, and another Government witness implicated appellant and two others in a plot to rob Silverman, and in the division shortly after the robbery of a sum of money approximating that taken from Silverman. The jury found unacceptable appellant's denial of complicity in the affair.

■ Accepting the evidence in the light most favorable to the Government,[5] it is evident that appellant's claim that it is insufficient to support the jury's verdicts is unsustainable if Silverman's in-trial identification and the testimonial references to its pretrial forerunners were properly received. Appellant does not challenge the fairness of either the photographic[6] or the courtroom identification,[7] but complains rather that never before his case was called for trial did the Government itself arrange for a lineup to test the photographic identification. He contends that, as a result, "defendant's counsel was forced to conduct his own lineup," and that somehow this worked a deprivation of due process.

We do not encounter any question as to whether a suspect is automatically entitled to a pretrial lineup, or whether an in-trial identification preceded by a nonsuggestive photographic identification is barred by an unused opportunity for a pretrial lineup.[8] The important

3. The judge twice referred to instances in which similar courtroom confrontations had resulted in identifications of the accused. Defense counsel informed the judge, however, that "I have considered it carefully, my client has been instructed of the dangers, and my client has instructed me that he is willing to run the risk; and, in fact demanded this be done."

4. As described by the trial judge, "[appellant] is seated in the second row on the spectators' side of the courtroom, and * * * there are with him three other persons of the Negro race, all of whom have mustaches, all of whom have the same type of haircut, all of whom are similarly dressed, all of whom have comparable coloration except one who seems to be somewhat darker."

5. E. g., Curley v. United States, 81 U.S. App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

6. Compare Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The trial judge in the instant case heard testimony bearing on the photographic identification, and ruled that "under the circumstances" it "was not impermissibly suggestive." That ruling is not attacked on this appeal.

7. See text *infra* following note 9.

8. See Bryant v. United States, No. 22,122 (D.C.Cir. Feb. 11, 1969) (unpublished). There we were urged to reverse a conviction because the accused's initial identification was from photographs rather than at a lineup. There was nothing to sug-

fact here is that appellant demanded and was afforded just the sort of personal confrontation that an orthodox lineup would have provided. The group Silverman viewed in the courtroom was selected by defense counsel, the viewing was conducted under impeccable conditions, and we are unable to detect any unfairness in its execution.[9] Appellant ventures only the possibility that Silverman may have seen appellant brought into the courtroom by a United States marshal, or that appellant may have inadvertently singled himself out by some display of nervous anxiety, but we find no basis whatever in the record for such speculation. Indeed, appellant's able trial counsel informed the trial judge that he would "stipulate for the record, in my judgment as an attorney, it was fair," and manifestly the judge, under whose supervision the viewing was conducted, was entirely satisfied. We conclude that appellant, having sought and obtained the courtroom confrontation in the face of ample warning as to the possible consequences,[10] is not in these circumstances in position to disown it.[11]

We are mindful of the fact that Silverman's photographic identification of appellant was made more than five months after the offenses in suit were committed, and that the courtroom lineup came nearly an additional six months later. We are not, however, prepared to say that, absent suggestivity in either, these transpirations were so necessarily fraught with possibilities of misidentification as to bar them, and the ensuing in-trial identification, from the evidence as a matter of law. We think the accuracy of Silverman's identifications of appellant under the circumstances here was a question residing within the jury's province, and that the trial judge was entirely right in leaving it there.

## II

The final ground alleged for reversal is the failure of the record to reflect appellant's presence in the courtroom when, after the jury had transmitted a written inquiry to the judge during the course of its deliberations, the judge took up with counsel the response to be made to the communication and thereafter gave that response to the jury. Silverman's initial identification of appellant consisted, as we have said, in his selection of appellant from a group of eight color photographs, and the jury's query was "[w]hen was colored picture of McNair taken (included in 8 shown to plaintiff)." In the courtroom, the judge, with counsel on both sides before him but with the jury absent, acknowledged receipt of the jury's note and read it for the benefit of counsel. Then occurred the following:

THE COURT: I assume they mean complaining witness. I don't recall any evidence—

[GOVERNMENT COUNSEL]: I don't think there was any evidence.

THE COURT: I don't recall any evidence received on the subject.

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: Was the picture received in evidence?

[GOVERNMENT COUNSEL]: No.

[DEFENSE COUNSEL]: No.

THE COURT: It was not. Call the jury back.

(Jury resumed places in jury box.)

THE COURT: Ladies and gentlemen, the Court has a note which the Court has shown to counsel. None of us recall any evidence on the basis of which I can directly answer your question; and since we decide these ques-

---

gest the invalidity of the photographic identification on due process grounds, and our examination of the record in that case discloses that no lineup of the accused was ever held. We affirmed the conviction.

9. See note 4, *supra*.

10. See note 3, *supra*.

11. Compare Johnson v. United States, 318 U.S. 189, 199–201, 63 S.Ct. 549, 87 L. Ed. 704 (1943) ; United States v. Thurman, 135 U.S.App.D.C. 184, 185, 417 F.2d 752, 753 (D.C.Cir. July 7, 1969).

tions in such a case as this on the evidence in the record, you must decide the case based on what you have. I can't give you anything more than what is in the record and there is no evidence on that subject.

That having been said, the jurors were excused, with an admonition not to discuss the case, until the following day when their deliberations would resume. As noted earlier, the record does not state whether appellant was present or absent at the time.

■ Some courts have held that the rendition of supplemental instructions to the jury in a felony case necessitates an affirmative showing in the record of the accused's presence.[12] A number of courts, on the other hand, have required the accused to demonstrate his absence.[13] We need not reach the question as to the direction in which the burden properly presses for, even assuming appellant's absence, we conclude that the proceedings were nonprejudicial.[14]

■ Indubitably, the accused is entitled to be present at every stage of his trial unless in a noncapital case he waives the right.[15] This principle is fundamental in our criminal law,[16] and is fully applicable to trial judges' communications with juries after they have commenced their deliberations.[17] This is true whether the communication is in the form of additional instructions, or is merely for the purpose of furnishing requested information.[18] Nonetheless, violations of this principle do not of themselves force reversal without a conjunctive finding of impingement thereby on interests of substance.[19] As in Walker v. United States [20] we ourselves held, "[s]uch an error does not require reversal * * * when the record shows with reasonable certainty that it did not prejudice the defendant's substantial rights."[21]

Appellant alleges such prejudice, reasoning that since identification was the key issue at trial any jural inquiry or communication concerning evidence of

---

12. See Fina v. United States, 46 F.2d 643, 644 (10th Cir. 1931); and see Lynn v. State, 250 Ala. 384, 34 So.2d 602, 605 (1948).

13. See State v. Miller, 100 Mo. 606, 13 S.W. 832, 837 (1890) (presumption of presence of accused); Hancock v. State, 120 Tex.Cr.R. 162, 47 S.W.2d 299, 302 (1932) (presence assumed in absence of contrary showing).

14. See Fed.R.Crim.P. 52(a).

15. "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. * * *" Fed. R.Crim.P. 43.

16. See Lewis v. United States, 146 U.S. 370, 372, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

17. Walker v. United States, 116 U.S.App. D.C. 221, 222, 322 F.2d 434, 435 (1963), cert. denied, 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964); Jones v. United States, 113 U.S.App.D.C. 352, 356, 308 F.2d 307, 311 (1962).

18. Walker v. United States, supra note 17, 116 U.S.App.D.C. at 222–223, 322 F.

2d at 435–436; Green v. State, 281 P. 2d 200, 201–202 (Okl.Cr.1955).

19. Walker v. United States, supra note 17, 116 U.S.App.D.C. at 222–223, 322 F.2d at 435–436; Outlaw v. United States, 81 F.2d 805, 808–809 (5th Cir.), cert. denied, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936); United States v. Ramsey, 291 F.2d 737, 739 (6th Cir.), cert. denied, 368 U.S. 899, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961); Ferrari v. United States, 244 F.2d 132, 145–146 (9th Cir.), cert. denied, Darneille v. United States, 355 U.S. 873, 78 S.Ct. 125, 2 L. Ed.2d 78 (1957); Estes v. United States, 335 F.2d 609, 617–618 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). See also United States v. Graham, 102 F.2d 436, 444 (2d Cir.), cert. denied, 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524 (1939); United States v. Neal, 320 F.2d 533, 536 (3d Cir. 1963); Rice v. United States, 356 F.2d 709, 717 (8th Cir. 1966). Cf. Shields v. United States, 273 U.S. 583, 588, 47 S.Ct. 478, 71 L. Ed. 787 (1927).

20. Supra note 17.

21. 116 U.S.App.D.C. at 222, 322 F.2d at 435.

the pretrial photographic identification bore on his rights in an important way. We think, however, that the inquiries and communication in the case at bar bespeak the contrary. The inquiries were simply as to whether there was evidence on the subject the jury asked about, and the gist of the judge's communication to the jury was that there was no evidence upon which to gather a response. Our examination of the record satisfies us that that was indeed the case, and appellant poses no derogating argument.

In consequence, the jury was left in much the same position it was before it sent its note to the judge. The only added knowledge it gleaned as a result was the uncontested fact that there was no evidentiary source to which it could look for an answer. We think that in consequence "the record shows with reasonable certainty that" the events complained of "did not prejudice the defendant's substantial rights." [22]

Affirmed.

FAHY, Senior Circuit Judge, concurs in affirmance and in Part I of the opinion.

---

22. See text *supra* at note 21.