**Mary L. JONES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16382.**

United States Court of Appeals

District of Columbia Circuit.

Argued April 24, 1962.

Decided Aug. 9, 1962.

Mr. Thomas M. Haderlein, Chicago, Ill., with whom Mr. Walter A. Slowinski, Washington, D. C. (both appointed by

this court) was on the brief, for appellant.

Mr. Judah Best, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., were on the brief, for appellee. Messrs. Charles T. Duncan, Principal Asst. U. S. Atty., and William H. Collins, Jr., Asst. U. S. Atty., also entered appearances for appellee.

Before DANAHER, BASTIAN and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge.

Appellant, together with one Shirley Green, was tried on a three-count indictment charging them jointly with (1) abusing and maltreating Robert Lee Green, (2) abusing and maltreating Anthony Lee Green,[1] and (3) involuntary manslaughter through failure to perform their legal duty of care for Anthony Lee Green, which failure resulted in his death.[2] At the close of evidence, after trial to a jury, the first two counts were dismissed as to both defendants. On the third count, appellant was convicted of involuntary manslaughter. Shirley Green was found not guilty.

Appellant urges several grounds for reversal. We need consider but two. First, appellant argues that there was insufficient evidence as a matter of law to warrant a jury finding of breach of duty in the care she rendered Anthony Lee. Alternatively, appellant argues that the trial court committed plain error[3] in failing to instruct the jury that it must first find that appellant was under a legal obligation to provide food and necessities to Anthony Lee before finding her guilty of manslaughter in failing to provide them. The first argument is without merit. Upon the latter we reverse.

A summary of the evidence, which is in conflict upon almost every significant issue, is necessary for the disposition of both arguments.[4] In late 1957, Shirley Green became pregnant, out of wedlock, with a child, Robert Lee, subsequently born August 17, 1958. Apparently to avoid the embarrassment of the presence of the child in the Green home, it was arranged that appellant, a family friend, would take the child to her home after birth. Appellant did so, and the child remained there continuously until removed by the police on August 5, 1960. Initially appellant made some motions toward the adoption of Robert Lee, but these came to nought, and shortly thereafter it was agreed that Shirley Green was to pay appellant $72 a month for his care. According to appellant, these payments were made for only five months. According to Shirley Green, they were made up to July, 1960.

Early in 1959 Shirley Green again became pregnant, this time with the child Anthony Lee, whose death is the basis of appellant's conviction. This child was born October 21, 1959. Soon after birth, Anthony Lee developed a mild jaundice condition, attributed to a blood incompatability with his mother. The jaundice resulted in his retention in the hospital for three days beyond the usual time, or until October 26, 1959, when, on authorization signed by Shirley Green, Anthony Lee was released by the hospital to appellant's custody. Shirley Green, after a two or three day stay in the hospital, also lived with appellant for three weeks, after which she returned to her parents' home, leaving the children with appellant. She testified she did not see them again, except for one visit in March, until August 5, 1960. Consequently, though there does not seem to have been any specific monetary agree-

1. Counts 1 and 2 were laid under D.C. Code § 22–901.

2. D.C.Code § 22–2405.

3. Rule 52(b), F.R.Cr.P. 18 U.S.C.A.

4. The verdict of a jury in a criminal case must be sustained when there is substantial evidence to support it, taking the view most favorable to the Government. Sipe v. United States, 80 U.S.App.D.C. 194, 150 F.2d 984, certiorari denied, 326 U.S. 788, 66 S.Ct. 473, 90 L.Ed. 478; McGuinn v. United States, 89 U.S.App. D.C. 197, 191 F.2d 477.

ment with Shirley Green covering Anthony Lee's support,[5] appellant had complete custody of both children until they were rescued by the police.

With regard to medical care, the evidence is undisputed. In March, 1960, appellant called a Dr. Turner to her home to treat Anthony Lee for a bronchial condition. Appellant also telephoned the doctor at various times to consult with him concerning Anthony Lee's diet and health. In early July, 1960, appellant took Anthony Lee to Dr. Turner's office where he was treated for "simple diarrhea." At this time the doctor noted the "wizened" appearance of the child and told appellant to tell the mother of the child that he should be taken to a hospital. This was not done.

On August 2, 1960, two collectors for the local gas company had occasion to go to the basement of appellant's home, and there saw the two children. Robert Lee and Anthony Lee at this time were age two years and ten months respectively. Robert Lee was in a "crib" consisting of a framework of wood, covered with a fine wire screening, including the top which was hinged. The "crib" was lined with newspaper, which was stained, apparently with feces, and crawling with roaches. Anthony Lee was lying in a bassinet and was described as having the appearance of a "small baby monkey." One collector testified to seeing roaches on Anthony Lee.

On August 5, 1960, the collectors returned to appellant's home in the company of several police officers and personnel of the Women's Bureau. At this time, Anthony Lee was upstairs in the dining room in the bassinet, but Robert Lee was still downstairs in his "crib." The officers removed the children to the D. C. General Hospital where Anthony Lee was diagnosed as suffering from severe malnutrition and lesions over large portions of his body, apparently caused by severe diaper rash. Following admission, he was fed repeatedly, apparently

with no difficulty, and was described as being very hungry. His death, 34 hours after admission, was attributed without dispute to malnutrition. At birth, Anthony Lee weighed six pounds, fifteen ounces—at death at age ten months, he weighed seven pounds, thirteen ounces. Normal weight at this age would have been approximately 14 pounds.

Appellant argues that nothing in the evidence establishes that she failed to provide food to Anthony Lee. She cites her own testimony and the testimony of a lodger, Mr. Wills, that she did in fact feed the baby regularly. At trial, the defense made repeated attempts to extract from the medical witnesses opinions that the jaundice, or the condition which caused it, might have prevented the baby from assimilating food. The doctors conceded this was possible but not probable since the autopsy revealed no condition which would support the defense theory. It was also shown by the disinterested medical witnesses that the child had no difficulty in ingesting food immediately after birth, and that Anthony Lee, in the last hours before his death, was able to take several bottles, apparently without difficulty, and seemed very hungry. This evidence, combined with the absence of any physical cause for nonassimilation, taken in the context of the condition in which these children were kept, presents a jury question on the feeding issue.

Moreover, there is substantial evidence from which the jury could have found that appellant failed to obtain proper medical care for the child. Appellant relies upon the evidence showing that on one occasion she summoned a doctor for the child, on another took the child to the doctor's office, and that she telephoned the doctor on several occasions about the baby's formula. However, the last time a doctor saw the child was a month before his death, and appellant admitted that on that occasion the doctor recommended hospitalization. Appellant did

5. It was uncontested that during the entire period the children were in appellant's home, appellant had ample means to provide food and medical care.

not hospitalize the child, nor did she take any other steps to obtain medical care in the last crucial month. Thus there was sufficient evidence to go to the jury on the issue of medical care, as well as failure to feed.[6]

Appellant also takes exception to the failure of the trial court to charge that the jury must find beyond a reasonable doubt, as an element of the crime, that appellant was under a legal duty to supply food and necessities to Anthony Lee. Appellant's attorney did not object to the failure to give this instruction, but urges here the application of Rule 52(b).

The problem of establishing the duty to take action which would preserve the life of another has not often arisen in the case law of this country.[7] The most commonly cited statement of the rule is found in People v. Beardsley, 150 Mich. 206, 113 N.W. 1128, 1129, 13 L.R.A., N.S., 1020:

> "The law recognizes that under some circumstances the omission of a duty owed by one individual to another, where such omission results in the death of the one to whom the duty is owing, will make the other chargeable with manslaughter. * * * This rule of law is always based upon the proposition that the duty neglected must be a legal duty, and not a mere moral obligation. It must be a duty imposed by law or by contract, and the omission to perform the duty must be the immedi-

ate and direct cause of death. * * * "

There are at least four situations in which the failure to act may constitute breach of a legal duty. One can be held criminally liable: first, where a statute imposes a duty to care for another;[8] second, where one stands in a certain status relationship to another;[9] third, where one has assumed a contractual duty to care for another;[10] and fourth, where one has voluntarily assumed the care of another and so secluded the helpless person as to prevent others from rendering aid.[11]

It is the contention of the Government that either the third or the fourth ground is applicable here. However, it is obvious that in any of the four situations, there are critical issues of fact which must be passed on by the jury—specifically in this case, whether appellant had entered into a contract with the mother for the care of Anthony Lee or, alternatively, whether she assumed the care of the child and secluded him from the care of his mother, his natural protector. On both of these issues, the evidence is in direct conflict, appellant insisting that the mother was actually living with appellant and Anthony Lee, and hence should have been taking care of the child herself, while Shirley Green testified she was living with her parents and was paying appellant to care for both children.

6. Compare State v. Beach, Mo.Sup.Ct., 329 S.W.2d 712, and Rex v. Ellen Jones, 19 Cox Crim.Cas. 678.

7. The problem has evoked considerable study. See, e. g., Holmes, The Common Law, p. 278 (1881); Moreland, A Rationale of Criminal Negligence, ch. 10 (1944); Hughes, Criminal Omissions, 67 Yale L.J. 590, 620–626 (1958); Annot., 10 A.L.R. 1137 (1921).

8. See, e. g., D.C.Code § 22–902; Craig v. State, 220 Md. 590, 155 A.2d 684.

9. A.L.R. Annot., supra, Note 7 (parent to child); Territory v. Manton, 8 Mont. 95, 19 P. 387 (husband to wife); Regina v. Smith, 8 Carr. & P. 153 (Eng. 1837)

(master to apprentice); United States v. Knowles, 26 Fed.Cas. 800 (No. 15,540) (ship's master to crew and passengers); cf. State v. Reitze, 86 N.J.L. 407, 92 A. 576 (innkeeper to inebriated customers).

10. Regina v. Smith, supra, Note 9; Rex v. Ellen Jones, supra, Note 6; People v. Montecino, 66 Cal.App.2d 85, 152 P. 2d 5.

11. Reg. v. Nicholls, 13 Cox Crim.Cas. 75; Rex v. Ellen Jones, supra, Note 6; 1 Wharton, Criminal Law, § 455 (12th Ed.). Cf. Rex v. Gibbins and Proctor, 13 Crim.App.R. 134 (Eng. 1918); State v. Noakes, 70 Vt. 247, 40 A. 249.

■■ In spite of this conflict, the instructions given in the case failed even to suggest the necessity for finding a legal duty of care. The only reference to duty in the instructions was the reading of the indictment which charged, inter alia, that the defendants "failed to perform their legal duty." A finding of legal duty is the critical element of the crime charged [12] and failure to instruct the jury concerning it was plain error.[13]

■ Since the case will have to be retried, another error should simply be noted. After the jury had retired for consideration of the case, a written communication was sent to the judge and answered by him, without notice to counsel. When counsel learned of this communication, it was disclosed that the note had been lost. Whereupon, on request of counsel, the court instructed the foreman of the jury to reconstruct the note. Counsel, not being satisfied that the note as reconstructed was a faithful representation of the original, asked that the jury be polled. This was denied. The note as reconstructed read: "May the jury find both defendants in this case guilty but also recommend clemency for only one of the two defendants?" The court's reply stated: "The jury has been instructed it can only bring in a verdict as to either or both defendants of guilty or not guilty."

It is obvious error to instruct the jury without notice to counsel.[14] Proper procedure requires that a jury be instructed in the courtroom in the presence of counsel and the defendant, and that counsel be given opportunity to except to the additional instruction.

Reversed and remanded.

12. People v. Beardsley, 150 Mich. 206, 113 N.W. 1128, 13 L.R.A.,N.S., 1020; United States v. Knowles, supra, Note 9; Anderson v. State, 27 Tex.App. 177, 11 S.W. 33; State v. Benton, 8 W.W.Harr. 1, 38 Del. 1, 187 A. 609; State v. Reitze, supra, Note 9; State v. Barnes, 141 Tenn. 469, 212 S.W. 100; State v. Berry, 36 N.M. 318, 14 P.2d 434.

13. Williams v. United States, 76 U.S.App. D.C. 299, 131 F.2d 21; F.R.Cr.P., Rule

52(b). The Government did request an instruction on "omissions" as negligence. This was denied. The charge as given was nothing more than the stock manslaughter charge unrelated to the facts and issues in this case.

14. Shields v. United States, 273 U.S. 583, 588, 47 S.Ct. 478, 71 L.Ed. 787. See Arrington v. Robertson, 3 Cir., 114 F.2d 821, 823, where the jury's communication to the judge was also not preserved.