**UNITED STATES of America,**
**Appellee,**

**v.**

**Anthony M. GROSSO, Samuel J. Grosso, Jennie B. Grosso and Joseph Pino.**

**Anthony M. Grosso, Appellant.**

**No. 14810.**

United States Court of Appeals Third Circuit.

Argued April 20, 1965.

Decided March 25, 1966.

Rehearing Denied May 3, 1966.

---

James E. McLaughlin, Pittsburgh, Pa., Robert L. Weinberg, Washington, D. C. (McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa., on the brief), for appellant, Williams, Wadden & Stein, Washington, D. C., of counsel.

Samuel J. Reich, Asst. U. S. Atty., Nick S. Fisfis, Asst. U. S. Atty., Pittsburgh, Pa. (Gustave Diamond, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

The appellant was tried by a jury and convicted on twenty counts of an indictment charging violations of the Gambling Tax Act of 1954 as amended, 26 U.S.C.A. §§ 4401 and 4411, and related provisions of § 7203 of the same title. On each of said counts he was fined $10,000 and sentenced to a term of imprisonment of one year. He was convicted also on a single count charging conspiracy to defraud the United States, 18 U.S.C.A. § 371, and was thereon fined $1,000 and sentenced to a term of imprisonment of one year. It was ordered that nine terms of imprisonment were to run consecutively and the others were to run concurrently with the term of imprisonment imposed on count 2. The present appeal is from the judgment entered on this verdict.

The appellant raises several questions, the most important of which is the following: whether, in the absence of both defendant and his counsel, and without notice, the substantial rights of the defendant were abridged by the action of the trial judge when, in response to an unrecorded note from the jury, he transmitted his reply, through the bailiff, without recalling the jury to the courtroom. The question is troublesome because of the wholly inadequate and badly confused record from which it is impossible to accurately reconstruct the incidents giving rise to the situation. We should add that the briefs on the question leave much to be desired.

After a trial which consumed more than four weeks, the instant case was submitted to the jury at approximately 4:15 P.M., on Wednesday, March 4, 1964. Thereafter deliberations continued until 11 P.M., when the jurors retired for the night. The following morning, at approximately 11:30 A.M., shortly after deliberations had been resumed, the jury sent a note to the judge purportedly indicating their inability to reach a verdict. Without notice to the appellant or his counsel, and in their absence, the judge instructed the jury, through the medium of the bailiff, to continue its deliberations. There was no record made of either the contents of the note [1] or the substance of the judge's response. Although informed of the occurrence shortly afterward, counsel for the appellant interposed no objection and failed to request corrective action by the Court.

It was obvious error for the trial judge to instruct the jury, in the absence of the appellant and his counsel, without notice to them. Shields v. United

---

1. The note was lost but it appears from the record that its content was similar to that of a second note, to which reference is made in the body of the opinion.

States, 273 U.S. 583, 588, 47 S.Ct. 478, 71 L.Ed. 787 (1927); United States v. Neal, 320 F.2d 533, 536 (3rd Cir. 1963); Jones v. United States, 113 U.S.App.D.C. 352, 308 F.2d 307, 311 (1962); Evans v. United States, 284 F.2d 393, 394 (6th Cir. 1960). It was likewise error to convey these instructions to the jury through the medium of the bailiff. Henderson v. United States, 204 F.2d 126 (6th Cir. 1953); Wheaton v. United States, 133 F.2d 522, 526 (8th Cir. 1943). These errors do not warrant reversal in the absence of prejudice to the substantial rights of the appellant.

■■ However, if appellant's counsel was of the opinion that the errors were prejudicial it was his obligation to interpose a timely objection and seek corrective action by the Court. United States v. Woodner, 317 F.2d 649, 651 (2nd Cir. 1963), cert. den. 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144; United States v. Agueci, 310 F.2d 817, 840, 99 A.L.R. 2d 478 (2nd Cir. 1962), cert. den. 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11; United States v. Williams, 271 F.2d 434, 437 (7th Cir. 1959), cert. den. 361 U.S. 961, 80 S.Ct. 589, 4 L.Ed.2d 543. He should have taken this course when he learned of the errors, but failed to do so. A defendant may not sit idly by in the face of obvious error and later take advantage of a situation which by his inaction he has helped to create. United States v. Agueci, supra.

■ Although not required to do so, we are empowered to consider the alleged errors on the merits if they affected the "substantial rights" of the appellant. Fed.Rules Cr.Proc., rule 52(b), 18 U.S.C.A.; United States v. Provenzano, 334 F.2d 678, 690 (3rd Cir. 1964), cert. den. 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed. 2d 544; Ramsey v. United States, 332 F. 2d 875, 877 (8th Cir. 1964); United States v. Vasen, 222 F.2d 3, 5, 6 (7th Cir. 1955), cert. den. 350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 744; United States v. Jones, 204 F.2d 745, 749 (7th Cir. 1953), cert. den. 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368. The power is discretionary and should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice. Ibid. We do not have such a situation in the instant case.

■ We find upon our review of the record that the evidence as to the appellant's guilt was overwhelming and that therefore there was no reasonable likelihood that the judge's instruction to the jury influenced the verdict. We are of the opinion that under the circumstances reversal on the ground urged is not warranted. Walker v. United States, 116 U.S.App.D.C. 221, 322 F.2d 434, 436 (1953), cert. den. 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421; United States v. Compagna, 146 F.2d 524, 528 (2nd Cir. 1944), cert. den. 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422. The case of United States v. Neal, supra, upon which the appellant relies, is distinguishable from the case now before us.

Following the above described incident the jury continued deliberations until 10:50 P.M. Shortly thereafter the bailiff in charge reported to the Court that one of the female jurors had been injured and that another had become ill. We are here concerned only with the ill juror. After she was given medical attention the physician reported to the judge by telephone that she was suffering from a nervous disorder, the exact nature of which is not disclosed by the record. This information was imparted to defense counsel, who had been summoned to the judge's chambers by a deputy marshal. The physician's report was apparently never reduced to writing; in any event, its content was not made a part of the record. The juror was again examined by the physician on the following morning. It would appear that the results of this examination were reported to the Court but were likewise not incorporated into the record.

Counsel for the parties met with the trial judge in his chambers on the morning of Friday, March 6, 1964, at which time they were informed that the juror was still ill but that the jury would be able to resume deliberations later in the day. Defense counsel objected to the

resumption of deliberations and moved for a mistrial and the discharge of the jury. He argued that because of the illness of the juror, further deliberations might result "in some sort of a compromise verdict." The motion was denied and jury deliberations were suspended until the following day.

On the morning of Saturday, March 7, the juror was again examined by the physician, who reported to the deputy marshal that she was still ill. However, the condition of the juror was apparently such that the jury was able to resume deliberations at 2:45 P.M. Shortly thereafter the information which the deputy marshal had received from the physician was transmitted to the trial judge in the presence of counsel. Defense counsel again renewed his motion for a mistrial and the discharge of the jury on the grounds urged earlier. The motion was denied. The trial judge then asked counsel if they would consider stipulating "that [the] case could continue * * with a jury of eleven." Defense counsel refused to so stipulate.

While counsel for the respective parties were in conference with the judge in chambers, the judge received a second note from the jury reading as follows:

"I am sorry to inform you that the jury has not been able to reach a verdict. We are deadlocked without any hope, we believe, of any change and feel it useless to deliberate any further. I am not familiar with procedure, but since the majority of the jurors feel that a meeting of the foreman with you might be helpful, I am making such a request."

Again the trial judge failed to recall the jurors to the courtroom. He stated to counsel: "We can't have a meeting with the foreman, but if they want a meeting, they could all come into court, but I don't know what would be accomplished by that. So I think we will just tell them we got their message and tell them to keep on working." Defense counsel interposed no objection to the proposed action of the trial judge and made no request that the jury be recalled

to the courtroom for further instructions. The bailiff was instructed to tell the jurors, "I have got their message and I suggest they keep on working." We assume that this message was conveyed to the jury, which continued its deliberations for approximately five hours. A verdict was returned at 8:30 P.M., and thereafter, at the request of defense counsel, the jurors were polled and each assented to the verdict as reported by the foreman.

When the jury returned its verdict the physician who had examined the ill juror was available in the courtroom and this was made known to the Court. Defense counsel requested that the physician be permitted to make his report; this occurred at 9:30 P.M. The Court denied the request stating, "I am not going to bring that up here at this time at all." However, it must be noted that on the previous day the trial judge advised defense counsel that in the event of conviction he could offer the testimony of the physician in support of a motion for a new trial. This motion was made in due course but neither the report of the physician nor his testimony was offered in support of it. It is reasonable to assume that the failure of defense counsel to produce this evidence was prompted by his deliberate choice.

The appellant challenges the verdict as void on the ground that it was the product of judicial coercion. He argues that under the circumstances of this case the prolonged confinement of the jury, coupled with the illness of the juror, constituted duress. We do not agree.

■■ The length of time a jury may be kept together for the purpose of deliberation is a matter within the discretion of the trial judge, and his action in requiring further deliberation after the jury has reported a disagreement does not, without more, constitute coercion. De Vault v. United States, 338 F.2d 179, 182 (10th Cir. 1964); Mills v. Tinsley, 314 F.2d 311, 313 (10th Cir. 1963), cert. den. 374 U.S. 847, 83 S.Ct. 1907, 10 L. Ed.2d 1067; United States v. Minieri, 303 F.2d 550, 556 (2nd Cir. 1962), cert.

den. 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed. 2d 81, and the cases therein cited. However, it has been held that such action, when accompanied by other circumstances, may be coercive. See United States v. Pleva, 66 F.2d 529 (2nd Cir. 1933). The illness of a juror may be regarded as such a circumstance, but only where it appears from the evidence that the verdict was induced by the juror's condition. Id. There is no such evidence in this case.

██ ██ Again these critical omissions by the appellant stands the fact that the jury was polled after it returned its verdict. The object of a jury poll is "to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that *no juror has been coerced or induced to agree to a verdict to which he has not fully assented.*" Miranda v. United States, 255 F.2d 9, 16, 17 (1st Cir. 1958). (Emphasis added). Humphries v. District of Columbia, 174 U.S. 190, 194, 19 S.Ct. 637, 43 L.Ed. 944. Since each of the jurors assented to the verdict as reported by the foreman, the verdict should not be set aside in the absence of some proof that coercion in fact existed. Contrary to the appellant's contention, the facts of the case do not speak for themselves.

There are several other questions raised on this appeal. These questions relate to: the admission of certain exhibits allegedly procured as a result of illegal searches and seizures; the denial of a motion to dismiss the indictment made prior to trial; the legality of the sentences; and, the constitutionality of § 4401 of Title 26 U.S.C.A. It is necessary that these questions be treated separately.

### ADMISSION OF TESTIMONY

The exhibits in question were seized in searches conducted at various places at different times. Prior to trial these exhibits were made the subject of a motion to suppress evidence filed by the appellant and three other defendants under rule 41(e) of Fed.Rules Cr.Proc., 18 U.S.C.A. This motion was denied, United States v. Grosso, D.C., 225 F.Supp. 161. A separate trial was granted the appellant on his motion for a severance filed under rule 14 of Fed.Rules Cr.Proc., 18 U.S.C.A. The arguments of the defendant relating to the admissibility of the exhibits will be separately discussed.

### A

██ It appears from the testimony of one Hannan, corroborated by his wife, that he was engaged in the operation of a numbers lottery and, between August of 1957 and April of 1961, was operating under an agreement to "lay off" his daily wagers with the appellant in return for a commission and a share of the profits. The relationship of the defendant to Hannan was that of a "banker." On April 27, 1960, special agents of the Internal Revenue Service, armed with a search warrant, raided the Hannan home, where they seized a notebook containing a daily record of Hannan's business and his transactions with the appellant. This notebook was a significant item of proof in the government's case.

At the trial Hannan was called as a witness and he testified at length as to the nature and extent of his daily business with the appellant. During his testimony the notebook was produced, identified by him as his personal record, and offered in evidence. The appellant interposed no objection to the testimony which preceded the offer but objected to the admission of the notebook on the ground that its seizure was illegal. The arguments advanced in support of the objection were confusing and difficult to follow. The objection was overruled and the exhibit was received.

The appellant here contends that: the search warrant was void; it was unlawfully executed; and, the special agent lacked authority to execute it. We find it unnecessary to consider these contentions, here raised for the first time.

It clearly appears from the undisputed evidence in the record that the premises searched were owned and occupied by Hannan and that the notebook seized was a personal record kept by him in the operation of his illegal business. The person against whom the search was directed was Hannan. There is nothing in the record to show that the appellant had the requisite legal interest in either the premises or the notebook and at no time did he claim such an interest. The appellant, relying on Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), maintains that he was not required to establish such an interest as a condition precedent to his right to challenge the constitutionality of the search and seizure. This reliance is misplaced and demonstrates the penchant of defense counsel for misreading cases.

The defendant in the *Jones* case was tried and convicted on each of two counts of an indictment charging violations of federal narcotics laws. The first count charged him with having "purchased, sold, dispensed and distributed" narcotics in violation of 26 U.S.C.A. § 4704 (a). The second count charged him with having "facilitated the concealment and sale of" narcotics, knowing the same to have been imported illegally, in violation of 21 U.S.C.A. § 174. In a prosecution under either of these statutes the conviction of the accused may rest solely on proof of possession. It is obvious that in such a prosecution an accused may not assert a possessory interest in the property seized without admitting his guilt.

The Court held that under such circumstances a defendant may raise the constitutional question without alleging or establishing, as a condition precedent, the requisite legal interest in the premises searched or the property seized. See Contreras v. United States, 291 F.2d 63 (9th Cir. 1961). The Court held further that an accused is a "person aggrieved by an unlawful search and seizure" within the meaning of rule 41(e), supra, if his conviction on the criminal charge made against him may be based solely upon proof of possession.

The appellant's interpretation of the *Jones* decision, if adopted, would completely vitiate the requirement of "standing." This was clearly not the intention of the Supreme Court. The Court held, consistently with earlier decisions, 362 U.S. at page 261, 80 S.Ct. at page 731 "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, *as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.*" (Emphasis supplied). The Court then stated, "Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy."

As we interpret the decision, the Court confirmed the general rule but created an exception applicable only in a limited class of cases, those cases in which an accused has a choice of asserting an interest in the property, thus admitting guilt, or foregoing his right to challenge the constitutionality of the search and seizure. We are of the opinion, and so hold, that the facts in the instant case do not bring it within the exception. See United States v. Konigsberg, 336 F.2d 844, 847 (3rd Cir. 1964), cert. den. sub nom. 379 U.S. 930, 85 S.Ct. 327, 13 L. Ed.2d 344. The appellant herein was tried and convicted of a number of offenses, none of which involved the element of possession.

We have considered the other grounds urged in support of the defendant's claim to standing but find them equally without merit.

### B

██ In the search of the premises of one Lovejoy, located in Bethel Park, Mt. Lebanon Township, local police officials seized "two black books" which apparently contained some evidence as

162

to the operations of a numbers lottery. The circumstances under which the search and seizure were made are set out in detail in the opinion of the District Court, supra. On the motion to suppress the evidence it was contended that the search and seizure violated the constitutional rights of the defendants, including those of the appellant. The contention was dismissed as without merit. The appellant here argues that the decision of the court below was erroneous. We do not agree. However, we find it unnecessary to consider the constitutional issue because of the circumstances under which the evidence was offered and received at the trial.

Prior to trial the district attorney represented to the Court that the evidence seized in the search of the Lovejoy premises would not be offered. The evidence was not offered in the government's direct case. The appellant took the stand in his own defense and, under examination by his counsel, not only denied his complicity in the offenses with which he was charged but also testified affirmatively that he had in no way been connected with the operations of a numbers lottery since late in 1950. He further testified that since that time he had been engaged in nothing but legitimate business enterprises.

In rebuttal the government introduced the testimony of a local police official who identified the books as having been seized in the search of the Lovejoy premises. He testified as to efforts made by the appellant to obtain possession of the books by bribery. The evidence, including the books, was offered for the limited purpose of refuting the appellant's sweeping claim that he had not been engaged in the numbers lottery since 1950. The jury was carefully and properly so instructed.

The appellant argues here, as he did in the court below, that receipt of the evidence was precluded by the government's pretrial representation that it would not be used. We cannot agree. Any advantage that the appellant could have derived from the representation was waived when he testified, under direct examination by his own counsel, that he had not been engaged in the numbers lottery since late in 1950. Under the circumstances the government was not required to stand idly by and let the testimony go unchallenged. The case of Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), although factually distinguishable, clearly supports this result.

In the *Walder* case it was stated at page 65, 74 S.Ct. at page 356:

"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. * * *

"Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the *sweeping claim that he had never dealt in or possessed any narcotics.* Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." (Emphasis supplied).

*C*

■ A search of the premises of one Betts, located in Jefferson Borough, resulted in the seizure of certain evidence, the nature of which is not disclosed. The appellant concedes that this evidence was neither offered nor received at the trial

but contends only that it was improperly used in the computation of his tax liability for certain periods covered by the respective counts of the indictment. We find nothing in the record to support the contention that the evidence was so used; in fact, the undisputed testimony is clearly to the contrary. Therefore we find it unnecessary to consider the appellant's attack on the constitutionality of the search.

### D

During an investigation of gambling in the area of Pittsburgh, local police officials obtained information that the Calvary Cemetery was being used as a "numbers drop," an exchange point at which lottery wagers were delivered surreptitiously to the representatives of the "bank." On November 27, 1959, while the cemetery was under surveillance, the police observed one Petraglia arrive on the scene in a blue Chevrolet. Shortly thereafter other vehicles arrived and their occupants [2] were observed depositing envelopes and brown paper bags in the Petraglia car. The police knew from experience and their earlier investigation that this was a customary method of delivery employed by numbers operators. They moved in, arrested Petraglia, immediately searched his car and found the envelopes and bags containing thousands of lottery slips. The arrest and search were made without a warrant.

It clearly appears from the undisputed evidence, which we find unnecessary to summarize, that the police had reasonable grounds and probable cause to believe that Petraglia and others they observed on the scene were engaged in the operation of a lottery in violation of Pennsylvania law. This seems to be conceded by the defendant. However, he argues that the absence of a warrant rendered unlawful the arrest and search which followed. We cannot agree. The urgency of the situation which confronted the police was sufficient to excuse their failure to obtain a warrant. Drap-

er v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653 (1950). Petraglia was in a moving vehicle apparently ready to flee as the police approached; in fact, his flight and that of one Berkowitz, who was in another car, was prevented when the police blocked the roadway with their vehicles. The case of McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), on which the defendant relies, is distinguishable on its facts and therefore inapposite.

Assuming the illegality of the search, we find the appellant lacked the standing to challenge it. Jones v. United States, supra; United States v. Konigsberg, supra. In his pretrial motion to suppress the evidence he neither alleged nor established the requisite interest in either the automobile searched or the property seized. At the trial of the action the appellant was in no better position to object to the admission of the evidence.

### DENIAL OF MOTION TO DISMISS INDICTMENT

Pursuant to rule 12(b)(2) of the Fed.Rules Cr.Proc., 18 U.S.C.A., the appellant moved for dismissal of the indictment on the ground that it was predicated at least in part on illegally seized evidence. The denial of this motion is urged as a ground for reversal. It is well established that an indictment is not open to challenge on the ground that the evidence presented to the grand jury was either inadequate or incompetent. Lawn v. United States, 355 U.S. 339, 349, 350, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 363, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Labate, 270 F.2d 122 (3rd Cir. 1959), cert. den. 361 U.S. 900, 80 S.Ct. 211, 4 L.Ed.2d 157; Coppedge v. United States, 114 U.S.App. D.C. 79, 311 F.2d 128, 132 (1962), reversed on other grounds 369 U.S. 438, 82

---

2. As a result of earlier investigations these persons were known to the police as "runners" or numbers operators.

S.Ct. 917, 8 L.Ed.2d 21; United States v. Aviles, 274 F.2d 179, 191 (2nd Cir. 1960).

## ALLEGED ILLEGALITY OF SENTENCES

■ The appellant contends that the trial judge erred in imposing a separate sentence on each of fifteen counts charging him with the failure to pay the excise taxes due for specified monthly periods. This contention was held by this Court to be without merit in the case of United States v. Minker, 312 F. 2d 632, 636 (3 Cir. 1962), cert. den. 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978, which is not mentioned in either brief.

## CONSTITUTIONALITY OF STATUTE

The appellant challenges the constitutionality of § 4401 of Title 26 U.S. C.A., under which a tax is imposed on wagers as defined in § 4421 of the same title. He argues that the requirement that he file a tax return stating the gross amount of the wagers received violates his constitutional privilege against self-incrimination. This argument is predicated on an alleged possibility of exposure to prosecution under local law. We have found no regulation under which such returns may be made available to local police and there is no evidence in the record that they are. The only public record available for inspection is an alphabetical list of the names of all persons who have paid special taxes under the Gambling Tax Act, supra. 26 U.S.C.A. § 6107.

A constitutional issue similar to that raised here was considered and decided by the Supreme Court in Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 417, 99 L.Ed. 475 (1955). The issue was disposed of on the following basis:

"If the petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amend-

ment. If he does not pay the occupational tax, proceeds to accept wagers, and is prosecuted therefor, as in this case, he cannot be compelled to testify and may claim his privilege. The only compulsion under the Act is that requiring the decision which would-be gamblers must make at the threshold. They may have to give up gambling, but there is no constitutional right to gamble. If they elect to wager, though it be unlawful, they must pay the tax."

This rationale is applicable here. See United States v. Costello, 352 F.2d 848, 851 (2nd Cir. 1965).

■ The imposition of a tax on wagers was a valid exercise of the federal taxing power. United States v. Kahriger, 345 U.S. 22, 31, 32, 73 S.Ct. 510, 97 L.Ed. 754 (1953); see also Lewis v. United States, supra. When the appellant voluntarily elected to engage in the business of accepting wagers he was required to pay the occupational tax imposed by § 4411 and the excise taxes imposed by § 4401. The requirement that he file a return was intimately related to the collection of the latter taxes and is therefore supportable as a proper enforcement measure. Under the rationale of the *Lewis* case, the possibility "of incrimination for future or even past acts, however great, is irrelevant * * *" United States v. Costello, supra.

■ If, as the appellant now contends, the form of return would call for the disclosure of potentially incriminatory information, the objection should have been raised in the return. See United States v. Sullivan, 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). The appellant may not refuse to pay the excise taxes lawfully due and then claim immunity from prosecution for this refusal on the ground that the requirement of a return per se violates his privilege. Id. at 264, 47 S.Ct. 607. Since he failed to file the returns "it is difficult to see how he can now claim the privilege even assuming that the disclosure of violations of law is called for." United States v. Kahriger, supra, 345

U.S. at 33, 73 S.Ct. at 515; Lewis v. United States, supra.

An argument similar to the one made here was advanced in United States v. Joseph, 278 F.2d 504 (3rd Cir. 1960), cert. den. 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52, and was therein held to be without merit.

The judgment of the court below will be affirmed.