Russell WEST, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Ann WEST, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 95–CA–2367–MR, 95–CA–2368–MR.

Court of Appeals of Kentucky.

Dec. 6, 1996.

Paul J. Neel, Jr., Louisville, for Appellants.

A.B. Chandler, III, Attorney General, Perry T. Ryan, Assistant Attorney General, Perry T. Ryan, Frankfort, for Appellee.

Before COMBS, DYCHE and KNOPF, JJ.

COMBS, Judge.

This is an appeal from final judgments of the Montgomery Circuit Court sentencing each of the appellants to one year imprisonment. The judgments were based upon jury verdicts finding Appellant Russell West guilty of reckless homicide and his co-defendant, Appellant Ann West, guilty of complicity to reckless homicide. Having considered the arguments of counsel, we affirm the convictions.

Prosecution of the Wests, husband and wife, was precipitated by the death of Lillian West, Russell's fifty-four-year-old disabled sister. The Wests were alleged to have caused Lillian's death by their failure to care adequately for her physical needs and to secure the medical assistance she required.

Lillian West was born with Down's Syndrome and a heart ailment. Throughout most of her life, she was cared for by her mother, Rebekah West. In 1979, Lillian and her mother moved in with the appellants. At that time, Lillian participated in activities at Pathway Shelter, a local health organization

providing services to mentally handicapped persons. Activities at this day program encouraged Lillian to develop a more independent lifestyle. With appropriate prompting, she could groom herself, participate in vocational training, and function in social settings. In 1983, Rebekah passed away, and Russell and Ann accepted responsibility for Lillian's care. Later, according to Russell, he became concerned that Lillian was being abused in some manner at Pathway Shelter and notified personnel that she would not continue to participate in the program.

Near Thanksgiving, 1992, according to Russell, Lillian became confined to her bed. He testified that it was at this time that her condition began to decline significantly and that she would not eat. On December 31, 1992, Russell delivered Lillian to the emergency room at Mary Chiles Hospital in Montgomery County. The physician tending to Lillian, Dr. David Gagnon, was alarmed by her condition and discussed the situation with Russell. Unnerved by the conversation, Gagnon referred the matter to a local social worker, who undertook an investigation of the circumstances surrounding Lillian's home environment.

On January 17, 1993, Lillian died at University of Kentucky Medical Center. On March 2, 1993, Russell was indicted for manslaughter in the second degree; Ann was indicted as a complicitor. The indictments were consolidated for trial. At trial, medical witnesses recounted Lillian's horrific physical condition, describing numerous decubitus ulcers (pressure or bedsores) in various stages of development (many severe enough to reveal muscle tissue and even bone), severe malnutrition, and the presence of dried tears and feces upon her body. Physicians attributed the cause of death to sepsis and confluent bronchial pneumonia precipitated by the decubitus ulcers. They testified that caretaker neglect led ultimately to Lillian's death.

The homicide statutes involved in this case are KRS 507.050 on reckless homicide and KRS 507.040 on manslaughter. The former statute provides that a person commits reckless homicide "when, with recklessness he causes the death of another person." One acts "recklessly" with respect to a result or to a circumstance when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.[1] KRS 501.020(4). The latter statute provides that a person commits second-degree manslaughter when he "wantonly causes the death of another person." A person acts "wantonly" with respect to a result or to a circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.[2] KRS 501.020(3).

Another statute which is relevant is KRS 501.030, which provides in part as follows:

A person is not guilty of a criminal offense unless:

(1) He has engaged in conduct which concludes a voluntary act or the omission to perform a duty which the law imposes upon him and which he is physically capable of performing; and

(2) He has engaged in such conduct intentionally, knowingly, wantonly or recklessly as the law may require, with respect to each element of the offense

. . . .

The Wests present identical issues on appeal. First, they maintain that neither of them had a duty to care for Lillian or to provide her with medical assistance. Thus, they conclude, neither of them could be convicted of an offense based upon the failure to provide such care. In a related argument, they note that the reckless homicide statute underlying their convictions does not, by its terms, impose criminal liability based upon an omission or failure to act. Therefore, they assert, the legislature must have envisioned that an *act* would form the basis of a conviction under the reckless homicide statute rather than a mere omission.

1. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

2. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

■ *People v. Beardsley,* 150 Mich. 206, 113 N.W. 1128 (1907), a commonly cited case, addresses the issue of criminal ramifications arising from the omission to act where one has a duty to take action to preserve the life of another and that omission results in the death of the person to whom the duty is owed. It provides as follows:

> The law recognizes that under some circumstances the omission of a duty owed by one individual to another, where such omission results in the death of the one to whom the duty is owing, will make the other chargeable with manslaughter. This rule of law is always based upon the proposition that the duty neglected must be a legal duty, and not a mere moral obligation. It must be a duty imposed by law or contract, and the omission to perform the duty must be the immediate and direct cause of death.... (citations omitted).

113 N.W. at 1129. We agree that before defendants can be found guilty of either reckless homicide or manslaughter, there must exist a legal duty owed by the defendants to the victim. A finding of legal duty is a critical element of the crime charged. As stated in KRS 501.030 and demonstrated by case law, the failure to perform a duty imposed by law may create criminal liability. Clearly, in the case of reckless homicide or manslaughter, the duty must be found outside the definition of the crime itself. The duty of care imposed may be found in the common law or in another statute. In this case, that duty statutorily is defined at KRS 209.020(6) as follows:

> "Caretaker" means an individual or institution who has the responsibility for the care of the adult as a result of family relationship, or who has assumed the responsibility for the care of the adult person voluntarily, or by contract, or agreement....

■ The trial court's instructions required the jury to be convinced beyond a reasonable doubt that Russell West was under a duty to provide Lillian with appropriate care and that he had breached that duty of care before liability could be imposed. The Commonwealth presented substantial evidence from which the jury could have concluded that Russell had assumed the duty of care and that Russell was acting in the capacity of "caretaker" as that term is defined by the provisions of KRS 209.020. Accordingly, the trial court did not err by instructing the jury with respect to reckless homicide and complicity to reckless homicide.

In *Jones v. United States,* 308 F.2d 307 (D.C.Cir.1962), the court stated as follows:

> There are at least four situations in which the failure to act may constitute breach of a legal duty. One can be held criminally liable: first, where a statute imposes a duty to care for another; second, where one stands in a certain status relationship to another; third, where one has assumed a contractual duty to care for another; and fourth, where one has voluntarily assumed the care of another and so secluded the helpless person as to prevent others from rendering aid. (footnotes omitted).

308 F.2d at 310. Russell met the last of the *Jones* tests particularly aptly in voluntarily accepting responsibility for Lillian's care *and thereafter isolating her* from contacts that might have resulted in her aid or assistance. Additionally, Kentucky's Protection of Adults statutes impose a duty on adult caretakers to avoid the abuse, neglect, and exploitation of their charges. Contrary to the appellants' suggestions, we find that Russell's duty of care is well-grounded in the law.

Next, the appellants contend that the evidence was insufficient to establish the crime of reckless homicide from which both their convictions flowed.[3] We disagree.

■ The standards for granting a directed verdict at trial and subjecting it to appellate review are set forth in *Commonwealth v.*

---

3. While our review of the case law of sister states revealed arguments concerning the legal and logical weakness underlying a charge of complicity based upon a principal's negligent or reckless commission or omission of an act, we do not understand Ann West's argument to include such an objection to having been convicted as a "complicitor to reckless homicide." *See, Colorado v. Wheeler,* 772 P.2d 101 (Colo.1989); *Connecticut v. Foster,* 202 Conn. 520, 522 A.2d 277 (1987); *Weidler v. State,* 624 So.2d 1090 (Ala.Cr.App. 1993). Therefore, we express no opinion as to this matter.

*Benham*, Ky., 816 S.W.2d 186 (1991). That case provides as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal. (citation omitted).

816 S.W.2d at 187. Our review of the entirety of the proceedings against the Wests does not indicate that it would have been unreasonable for the jury to have believed that Russell acted recklessly with respect to his duty toward Lillian or that Ann acted as a complicitor with regard to the commission of the crime. The evidence was sufficient to support their convictions.

For the foregoing reasons, we affirm the judgments of the Montgomery Circuit Court.

All concur.