**Jason Ray ISON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2007–CA–001007–MR.**

Court of Appeals of Kentucky.

Sept. 26, 2008.

Discretionary Review Denied
Jan. 14, 2009.

**534**

Roy Alyette Durham, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Frankfort, KY, for appellee.

Before VANMETER and WINE, Judges; LAMBERT,[1] Senior Judge.

*OPINION*

VANMETER, Judge.

Jason Ray Ison appeals from a judgment entered by the Letcher Circuit Court after a jury convicted him on multiple charges including reckless homicide (three counts), first-degree assault, first-degree wanton endangerment (two counts), and criminal mischief. We affirm in part, and reverse and remand in part.

On the rainy afternoon of October 21, 2005, Ison was driving his Ford Mustang on Highway 15 in Letcher County. His passengers included his wife (Misty Ison), best friend (Jimmy Boggs), and cousin (Allen Bailey). An eyewitness in the vehicle behind Ison testified that Ison drove within the speed limit and safely negotiated a curve before losing traction and crossing lanes into oncoming traffic, where his vehicle collided with a vehicle driven by Tracy Craft. Ison's three passengers died as a result of the collision, while Craft sustained a severe injury to her leg. Craft's two passengers were not injured.

Ison was taken to a hospital and treated for a concussion. Hospital toxicology reports were negative for the presence of drugs or alcohol in Ison's blood, but positive for hydrocodone, marijuana, and Xanax in his urine. Both sets of results were independently verified by the Kentucky State Police forensic crime lab.

Ison was subsequently indicted on numerous charges arising out of the collision. A jury convicted him of reckless homicide [2] (three counts), first-degree assault,[3] first-degree wanton endangerment [4] (two counts), criminal mischief, having defective equipment on his car, and failing to have automotive insurance and proper registration. He was acquitted on one count of

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. KRS 507.050.

3. KRS 508.010.

4. KRS 508.060.

driving under the influence (DUI) and three counts of second-degree manslaughter. Ultimately, Ison was sentenced to a total of 18.5 years' imprisonment, including 18.5 years for first-degree assault, and five years for each count of reckless homicide. This appeal followed.

In essence, Ison argues that because there was insufficient proof of the necessary mental states for the offenses of first-degree assault, first-degree wanton endangerment, and reckless homicide, the trial court erred in overruling his motions for a directed verdict and judgment notwithstanding the verdict (n.o.v.) as to those charges. We agree.

Wanton behavior generally requires a person to be aware of, but consciously disregard, "a substantial and unjustifiable risk" which is "of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." KRS 501.020(3). Second-degree manslaughter,[5] second- or fourth-degree assault,[6] and second-degree wanton endangerment[7] all involve such a level of wanton behavior.

Manslaughter, assault, or wanton endangerment each may be elevated to a more serious offense if the wanton behavior occurred under "circumstances manifesting extreme indifference to" human life. Thus, for instance, the use of a motor vehicle in causing the death of another person may be elevated from second-degree manslaughter to murder if the defendant's actions occurred under "circumstances manifesting extreme indifference to human life[.]" KRS 507.020(1)(b). Sim-

ilarly, a defendant may be charged with first-degree assault or first-degree wanton endangerment, rather than the lesser offense, if his or her wanton behavior occurred under "circumstances manifesting extreme indifference to the value of human life[.]" KRS 508.010(1)(b); KRS 508.060(1).

The sufficiency of evidence to prove such an elevated level of mental culpability was recently reviewed by the Kentucky Supreme Court in *Brown v. Commonwealth,* 174 S.W.3d 421, 425 (Ky.2005). Examining "cases involving unintentional vehicular homicides"[8] to determine whether the elevated level of culpability had been proven, the court stated:

> In *Hamilton v. Commonwealth,* 560 S.W.2d 539 (Ky.1977), we held that the evidence was sufficient where the defendant, while under the influence of alcohol, drove his vehicle at a rate exceeding the speed limit and entered an intersection against a red light. *Id.* at 543. In *Walden v. Commonwealth,* 805 S.W.2d 102 (Ky.1991), *overruled on other grounds by Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky.1996), we upheld a wanton murder conviction where the defendant lost control of his vehicle and crossed the center line while operating his vehicle while under the influence of alcohol and at a high rate of speed. *Id.* at 105. In *Estep v. Commonwealth,* 957 S.W.2d 191 (Ky.1997), we held that the evidence was sufficient where the defendant operated a motor vehicle at a high rate of speed after ingesting five different prescription drugs, one of which had debilitating effects of which

---

5. KRS 507.040(1)(a).

6. KRS 508.020(1)(c) and KRS 508.030(1)(a).

7. KRS 508.070.

8. While the cases cited in *Brown* relate to situations of criminal homicide, the same issues of mental culpability apply to the first-degree assault and first-degree wanton endangerment issues now before us.

she was aware, crossed the center line to pass another automobile in a no-passing zone, failed to return her vehicle to the proper lane, and caused a fatal collision. *Id.* at 193. In *Love v. Commonwealth*, 55 S.W.3d 816 (Ky.2001), we held the evidence sufficient where the defendant was speeding, was intoxicated, and did not slow down or attempt to stop upon seeing a police car blocking the road but attempted to swerve around the police car while traveling a reported seventy to ninety miles per hour. *Id.* at 827. In *Cook v. Commonwealth*, 129 S.W.3d 351 (Ky.2004), we held the evidence sufficient where the defendant was intoxicated, admitted he was aware of the risk of driving while intoxicated, and lost control of his vehicle while operating it at a high rate of speed because he wanted to show his passenger "what his car had." *Id.* at 362–63.

174 S.W.3d at 426. The court further described the types of behavior typically thought to constitute "extreme indifference to human life," such as shooting into a crowd, derailing a train, or planting a bomb in a public place. *Id.* at 426.

Here, although Ison's vehicle was described as having rear tires which were extremely worn, the eyewitness to the collision testified that Ison was not speeding or driving erratically before the tires lost traction immediately prior to the collision. Further, the toxicology report showed no alcohol or drugs in Ison's blood. While hydrocodone, marijuana, and Xanax were found in his urine, the evidence includes a letter from a forensic toxicologist to Ison's attorney, introduced as Commonwealth's Exhibit 62, which states in part:

> This motor vehicle collision occurred at approximately 4:00 p.m. on the afternoon of October 21, 2005. Blood and urine samples were obtained from Mr. Ison at 6:38 p.m. on October 21, 2005

and were transported to the Kentucky State Police Laboratory. Analysis of the urine sample for drugs of abuse disclosed the presence of hydrocodone, alprazolam, and cannabinoid metabolites. It is clear from these results that Jason Ison used hydrocodone, an opiate, and alprazolam, a benzodiazepine anti-anxiety agent, within the twenty-four hours prior to the collision. The results also indicate that Mr. Ison used marijuana within the seven-day period prior to the collision. These urinary results are confirmed by the hospital laboratory report of the analysis of urine collected from Mr. Ison at 9:33 p.m. on October 21, 2005.

> Although there is no doubt that Jason Ison used these three drugs at some time prior to the collision, there is no toxicologic evidence to support a finding that he was under the influence of any substance at the time of the collision. Drugs that produce their effects upon the central nervous system, including alcohol and the three substances identified in Mr. Ison's urine, are delivered to the affected tissues by the bloodstream. If there is no identifiable substance in the bloodstream, there is no drug-related impairment. Accordingly, it is my professional opinion that the ability of Jason Ison to operate a motor vehicle at 4:00 p.m. on October 21, 2005 was not impaired by any chemical substance.

The Commonwealth provided no evidence to counter the toxicologist's conclusion that Ison was not under the influence or impaired by any chemical substance at the time of the collision, and the jury found Ison not guilty of DUI. Moreover, although a witness testified that he sold the Mustang to Ison's mother approximately one year before the collision after telling Ison the car was "loaded up" and "powerful," we find no authority for concluding that the mere driving of such a vehicle, even one with worn tires, in and of itself

constitutes extreme indifference to the value of any human life.[9] Absent proof sufficient to satisfy the elevated wantonness element of first-degree assault and first-degree wanton endangerment, it was "clearly unreasonable for [the] jury to find" that Ison was guilty of either charge. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). Thus, the trial court clearly erred by failing to grant a directed verdict or judgment n.o.v. as to those charges.

◼ Similarly, the evidence is insufficient to support Ison's convictions for reckless homicide. KRS 501.020(4) provides that:

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

Further,

before defendants can be found guilty of either reckless homicide or manslaughter, there must exist a legal duty owed by the defendants to the victim. A finding of legal duty is a critical element of the crime charged. As stated in KRS 501.030 and demonstrated by case law, the failure to perform a duty imposed by law may create criminal liability. Clearly, in the case of reckless homicide or manslaughter, the duty must be found outside the definition of the crime itself. The duty of care imposed may be found in the common law or in another statute.

*West v. Commonwealth*, 935 S.W.2d 315, 317 (Ky.App.1996).

The parties have cited, and this court has found, no pertinent Kentucky legal authority linking excessively worn tires to charges of reckless homicide.[10] Instead, published Kentucky cases relating to reckless homicide convictions have involved circumstances such as driving under the influence, *Commonwealth v. Runion*, 873 S.W.2d 583 (Ky.App.1993), running a stop sign while driving at twice the speed limit, *Commonwealth v. Harrell*, 3 S.W.3d 349 (Ky.1999), or causing a disabled woman's death through neglectful care. *West*, 935 S.W.2d 315. On the other hand, the Ken-

---

9. We also note the jury did not return a guilty verdict on the charges of second-degree manslaughter, but instead convicted Ison of the lesser included charges of reckless homicide. The difference in the two charges, of course, is that the former relates to wanton conduct, whereas the latter relates to reckless conduct. KRS 507.040, 507.050.

10. While the courts of this Commonwealth have yet to address whether a person acts recklessly when driving an automobile with worn tires, other jurisdictions have found such conduct, when combined with other factors, may constitute criminal conduct. In *Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767 (1975), a Pennsylvania superior court found worn tires, combined with a wet highway and excessive speed, were sufficient to sustain a conviction for vehicular

homicide. Likewise, in *Lewek v. State*, 702 So.2d 527 (Fla.App.1997), the defendant was found to have driven recklessly when not only were his tires worn down as far as Ison's, but a tire was missing a lug nut, and the driver was traveling 60 m.p.h. in a 45 m.p.h. speed zone as he approached an intersection and then accelerated through the intersection against a red light. Finally, an Atlanta cab driver pled guilty to vehicular homicide after he drove a vehicle with zero tread on the rear tires and lost control on a wet highway, resulting in a passenger's death. However, Georgia, unlike Kentucky, had enacted a specific statute mandating all tires "[s]hall have not less than 2/32 inch tread measurable in all major grooves[.]" *Heller v. City of Atlanta*, 290 Ga.App. 345, 659 S.E.2d 617, 620 (2008).

tucky Supreme Court has held that absent other evidence of recklessness, a defendant's failure to properly secure a child in a vehicle, in violation of the seatbelt restraint law, did not satisfy the requisite mental state applicable to reckless homicide when the child died as a result of being thrown out of the car in a collision. *Commonwealth v. Mitchell,* 41 S.W.3d 434 (Ky.2001).

Here, the record includes evidence of local media reports reflecting strong public sentiment against Ison, based on the apparently popular public belief that the collision resulted from Ison driving at an excessive speed while under the influence of alcohol and/or three types of drugs. At trial, however, no evidence showed that Ison was impaired by any substance at the time of the collision, or that he drove recklessly or above the speed limit before the collision. Instead, the evidence showed only that at the time of the undeniably tragic collision Ison was driving a car with worn tires, in the rain, at or below the speed limit, and that he lost control of his vehicle before crossing into the oncoming lane of traffic. Even in light of the horrific results, in the absence of some aggravating circumstance such as being under the influence of alcohol or controlled substances, travelling at excessive speed, or violating traffic statutes, Ison's driving of a vehicle with worn tires did not constitute criminal conduct with the prerequisite mental state for "reckless" behavior. It was, therefore, clearly unreasonable for the jury to find Ison guilty of the three counts of reckless homicide, and the court erred by failing to grant a directed verdict or judgment n.o.v. as to those charges.

Next, Ison asserts that the trial court abused its discretion by denying his motion to sever the charges of failing to have automotive insurance and proper registration from the other charges. We disagree.

Evidence regarding liability insurance coverage is inadmissible to show that a person "acted negligently or otherwise wrongfully." KRE [11] 411. However, such evidence is necessarily admissible to prove a violation of automobile liability insurance requirements. Moreover, although RCr [12] 9.16 requires a trial court to sever joined charges if either a defendant or the Commonwealth would be prejudiced by the failure to do so, all of Ison's charges, including those relating to insurance and registration, stemmed from a single set of circumstances. *See* RCr 6.18. We cannot say that the trial court abused its discretion by failing to sever the charges. *See Jackson v. Commonwealth,* 20 S.W.3d 906 (Ky.2000).

Given our conclusions thus far, the remaining issues raised on appeal are rendered moot.

For the foregoing reasons, the Letcher Circuit Court's judgment is reversed and remanded for dismissal of the charges of first-degree assault, first-degree wanton endangerment (two counts), and reckless homicide (three counts), and for any proceedings consistent therewith. The judgment is affirmed in all other respects.

ALL CONCUR.

---

11. Kentucky Rules of Evidence.

12. Kentucky Rules of Criminal Procedure.